# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| McCARTER & ENGLISH, LLP | )<br>) |
| *Plaintiff,* | )<br>) Civil Action No. _____<br>) |
| vs. | )<br>)<br>) |
| JARROW FORMULAS, INC. | )<br>) |
| *Defendant.* | )<br>)<br>) |

## COMPLAINT

Plaintiff, McCarter & English, LLP ("McCarter"), as and for its Complaint against Jarrow Formulas, Inc. ("Jarrow"), alleges as follows:

### NATURE OF PROCEEDINGS

1. This is an action for collection of attorneys' fees and disbursements incurred in connection with legal services provided by McCarter to Jarrow in the District of Connecticut and in the Western District of Kentucky.

### PARTIES

2. McCarter is a limited liability partnership organized and existing as a law firm under the laws of the state of New Jersey with multiple offices in the northeast, including an office at CityPlace I, 185 Asylum Street, Hartford, Connecticut 06103.

3. Jarrow is a California corporation with an office and principal place of business at 1824 South Robertson Boulevard, Los Angeles, California 90035. Jarrow is in the business of manufacturing, distributing and selling dietary supplements throughout the United States, including in the District of Connecticut.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

5.     This Court has personal jurisdiction over Jarrow because (i) for more than twenty years it requested, contracted for, and obtained legal services from law firms in the District of Connecticut, including but not limited to McCarter; (ii) the legal services at issue in this lawsuit were substantially rendered in the District of Connecticut; and (iii) over the course of more than twenty years, the Chairman of Jarrow regularly travelled to the District of Connecticut to meet with Jarrow's lawyers in connection with Jarrow's receipt of legal services.

6.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because Jarrow conducts business in this district, Jarrow's Chairman regularly traveled into the District of Connecticut in order to receive legal services, and the legal services that Jarrow contracted for that are the subject of the unpaid fees were substantially rendered in Connecticut.

## FACTUAL ALLEGATIONS

7.     Beginning in or about December 1996, Jarrow engaged Attorney Mark D. Giarratana, then a partner in the Connecticut law firm of McCormick, Paulding & Huber, LLP, to represent Jarrow in connection with litigation brought against Jarrow and other defendants in the United States District Court for the District of Connecticut. The terms of the engagement were memorialized in a letter dated December 5, 1996. Thereafter Jarrow Formulas regularly turned to McCormick, Paulding & Huber and, in particular, Attorney Giarratana, for legal representation, including litigation and patent and trademark matters.

8. In or about August 1998, Attorney Giarratana joined the Connecticut law firm of Cummings & Lockwood, LLC in its Hartford, Connecticut office. Jarrow was advised that Attorney Giarratana had changed firms, and Jarrow elected to engage Cummings & Lockwood and, in particular, Attorney Giarratana, for continued legal representation.

9. In or about September 2003, some of the lawyers in Cummings & Lockwood, including Attorney Giarratana, joined McCarter. Jarrow was advised of the merger and elected to continue to be represented by McCarter. For the following 15+ years, until July 12, 2019, McCarter represented Jarrow Formulas in connection with intellectual property matters (including patent and trademark prosecutions), litigation matters (including patent, trademark, trade secret, contract, insurance coverage and class action disputes), and various contract drafting and negotiation matters. During its attorney-client relationship with Jarrow, McCarter opened over 400 matter files, all of which were handled by Attorney Giarratana and other lawyers, primarily out of McCarter's Hartford, Connecticut office.

10. From the beginning of its attorney-client relationship with Jarrow, McCarter routinely issued monthly invoices in arrears for legal services rendered and disbursements incurred during the prior month. McCarter billed Jarrow on a time-devoted basis (at hourly rates in increments of one-tenth of an hour) plus out-of-pocket costs or disbursements. McCarter's invoices to Jarrow always included a clear description of the specific tasks performed, the identity of each lawyer, paralegal or project clerk performing the task or tasks, the date on which the task or tasks were performed, the time devoted by each timekeeper to each task or tasks, the hourly rate charged with respect to each timekeeper, and the total fees and disbursements due for the immediately preceding month.

11. Jarrow paid McCarter's invoices periodically, albeit at times with a negotiated discount when McCarter requested its account to be brought current, typically at or near McCarter's fiscal year end.

12. Beginning in August 2011, McCarter was engaged by Jarrow to represent Jarrow and its new contract consultant, Kean Ashurst, in connection with claims made by Caudill Seed & Warehouse Company, Inc. ("Caudill Seed") against Mr. Ashurst and, later, Jarrow, stemming from Jarrow's contractual relationship with Mr. Ashurst, a former employee of Caudill Seed.

13. Caudill Seed sued Kean Ashurst in the Jefferson Circuit Court in Louisville, Kentucky. McCarter obtained a complete dismissal with prejudice of all claims in the state court action for no consideration.

14. Caudill Seed sued Jarrow in the United States District Court for the Western District of Kentucky (the "Kentucky Litigation"). The claims against Jarrow included: tortious interference; mail/wire fraud – theft by deception; unjust enrichment; extortion – violation of the Hobbs Act; fraud – outrageous conduct; violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1861-1864; and violation of the Kentucky Uniform Trade Secrets Act, KRS § 365.880 *et. seq.* Caudill Seed claimed compensatory damages in the amount of $12 Million plus treble damages and attorneys' fees.

15. McCarter obtained a dismissal of all claims against Jarrow except for the trade secrets claim.

16. Beginning on June 3, 2019, the trade secrets claim against Jarrow was tried before a jury in the United States District Court for the Western District of Kentucky (the "Kentucky Jury Trial"). Attorney Giarratana, together with Attorneys Eric E. Grondahl, Thomas J. Rechen and John Cordani, all of McCarter's Hartford Office, relocated to Louisville for a period of

4

approximately four weeks to try the case, together with Jarrow's local Louisville, Kentucky counsel, Attorney Joel T. Beres of Stites & Harbison, PLLC.

17. On June 26, 2019, the jury returned a verdict in favor of Caudill Seed in the amount of $2,427,605. The jury further found willful and malicious misappropriation by Jarrow.

18. As of the date of this Complaint, judgment has not entered in the Kentucky Litigation.

19. On July 10, 2019, Attorney Rechen, sent an e-mail to Jarrow Rogovin (Chairman and President of Jarrow), Ben Khowong (Chief Executive Officer and Chief Financial Officer), Jonathan Leventhal (In-House Counsel), and Mary Grace Reyes (an employee in Jarrow's accounts payable department), advising that there was an outstanding balance owed to McCarter in the amount of $1,239,306.82, of which $1,201,366.45 related to the Kentucky Litigation. The outstanding balance was for legal services dating back to April 17, 2019. In addition, Attorney Rechen's e-mail forwarded McCarter's new invoice in the amount of $760,780.80 for fees and disbursements incurred during the month of June in connection with the Kentucky Jury Trial. As to the outstanding balance, McCarter requested that Jarrow Formulas make arrangements for immediate payment. As to the new invoice for the Kentucky Jury Trial, McCarter requested that it be paid promptly and, in all events, within thirty days.

20. Jarrow failed to respond to Attorney Rechen's e-mail. Further, since the date of the jury verdict to July 22, 2019, Jarrow's Chairman and its In-House Counsel failed and refused to respond to numerous e-mails and telephone calls, including voicemails specifically requesting them to return the call.

21. On or about July 15, 2019, McCarter received, via Federal Express, a letter dated July 12, 2019 from Attorney Carol Brophy of the law firm Steptoe & Johnson LLP in San

Francisco, California, purporting to terminate the attorney-client relationship between Jarrow and McCarter and directing the disposition of McCarter's client files relating to Jarrow. The letter made no mention of Attorney Rechen's July 10, 2019 e-mail and no mention or indication of Jarrow's intent regarding its outstanding balance with McCarter.

22. On July 17, 2019, Attorney Giarratana responded to Attorney Brophy's July 12, 2019 letter, requesting that the client, Jarrow, confirm in a writing signed by a duly authorized representative of Jarrow, that Jarrow (i) authorized the transfer of files as directed in Attorney Brophy's letter, (ii) was terminating the attorney-client relationship between McCarter and Jarrow, and (iii) was directing McCarter to file motions to withdraw as counsel in the Kentucky Litigation.

23. On July 18, 2019, McCarter received, via e-mail, a letter from Jarrow's In-House Counsel, Jonathan Leventhal, confirming Jarrow's termination of the attorney-client relationship between Jarrow and McCarter and directing the disposition of McCarter's client files relating to Jarrow. Again, the letter made no mention of Attorney Rechen's July 10, 2019 e-mail and no mention or indication of Jarrow's intent regarding its outstanding balance with McCarter.

24. Attorney Leventhal's letter did not address whether McCarter should file motions to withdraw as counsel in the Kentucky Litigation. Nonetheless, since Jarrow unequivocally terminated the attorney-client relationship, Attorneys Giarratana, Grondahl and Rechen, as well as their associate, Attorney Alexander Hornat, filed motions to withdraw their appearances on July 19, 2019. Those motions remain pending.

25. Also on July 19, 2019, in a letter to Attorney Brophy, Attorney Giarratana responded to the letters received from Attorney Brophy and Attorney Leventhal. In his letter, Attorney Giarratana addressed once again the outstanding attorneys' fees and costs owed to

McCarter and requested that Jarrow "advise immediately what steps have been taken to satisfy Jarrow Formulas obligations to McCarter & English, LLP and when payment may be expected."

26. Mr. Jarrow Rogovin, Chairman and President of Jarrow, responded via e-mail on July 22, 2019, advising McCarter that he was unwilling to pay McCarter's outstanding invoice for fees and disbursements relating to the Kentucky Litigation; expressing his disappointment with the adverse verdict rendered in that case; and second guessing some of the trial strategies employed by McCarter in that litigation. In that e-mail, Jarrow promised to pay within a month only the outstanding McCarter invoices unrelated to the Kentucky Litigation.

27. Since Mr. Rechen's July 10, 2019 e-mail, McCarter has further invoiced Jarrow Formulas for $11,204.86 in attorneys' fees and disbursements incurred during June 2019 in connection with various intellectual property matters handled by McCarter for Jarrow prior to receiving the July 12, 2019 letter from Attorney Brophy. These invoices are unrelated to the Kentucky Litigation and the Kentucky Jury Trial.

28. As of the date of this Complaint, the sum of $1,962,147.20 is due and owing to McCarter for legal services rendered and disbursements (whether advanced or due and payable) by McCarter for the benefit of Jarrow in the Kentucky Litigation from April 17, 2019 through June 30, 2019. Additional invoices from expert witnesses, court reporters, and others, who provided services to McCarter during the Kentucky Litigation, may yet be received and paid by McCarter, in which event the aforedescribed amount due and owing would be increased. In addition, McCarter performed services in July 2019 and incurred additional disbursements prior to receiving notification of the termination of its representation of Jarrow on July 15, 2019, and may provide additional services and incur additional disbursements in order to address Jarrow's request that McCarter transfer files to other law firms and to provide requested information in

connection with such matters. Jarrow has provided no assurance of its intention to pay such amounts. Accordingly, the aforedescribed amount due and owing may be increased for these additional reasons.

29.  Jarrow has failed and refused to pay McCarter the sums presently owed in the amount of $1,962,147.20, and has provided no assurance of its intention to pay.

## COUNT I (BREACH OF CONTRACT)

30.  Paragraphs 1-29 above are incorporated as if fully set forth in this Count I.

31.  Jarrow has breached its contract with McCarter for the provision of legal services.

32.  McCarter has suffered damages as a result of Jarrow's breaches.

## COUNT II (ACCOUNT STATED)

33.  Paragraphs 1-29 above are incorporated as if fully set forth in this Count II.

34.  McCarter rendered to Jarrow and Jarrow received invoices for legal services and disbursement and statements of its account with McCarter, which have been retained by Jarrow for an unreasonable period of time without objection and without payment such that they now represent an account stated.

35.  McCarter has been damaged as a result of Jarrow's failure to pay.

## COUNT III (UNJUST ENRICHMENT/QUANTUM MERUIT)

36.  Paragraphs 1-29 above are incorporated as if fully set forth in this Count III.

37.  Jarrow knowingly accepted and received legal representation and related services having substantial value.

38.  Jarrow agreed to pay McCarter for the aforedescribed legal representation and related services.

39. Jarrow has wrongly failed and refused to pay for the reasonable value of the aforedescribed legal representation and related services and has, therefore, been unjustly enriched.

40. Jarrow's failure of payment is to the severe financial harm and detriment of McCarter.

41. McCarter has been damaged as a result of Jarrow's failure to pay.

## PRAYER FOR RELIEF

WHEREFORE, McCarter English, LLP prays for relief as follows:

1. Compensatory damages in excess of $75,000 exclusive of interest and costs;

2. Pre-judgment interest pursuant to Conn. Gen. Stat. § 37-3a;

3. Costs and expenses, if any, to which McCarter English, LLP may be entitled by statute or court rule;

4. Such other and further legal or equitable relief as the court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF ALL CLAIMS SO TRIABLE**

Dated: July 22, 2019                    PLAINTIFF: McCARTER & ENGLISH, LLP

By: _____
Louis R. Pepe
Federal Bar. No. CT04319
McElroy Deutsch Mulvaney & Carpenter LLP
One State Street, 14th Floor
Hartford, CT 06103
Phone: 860-522-5175
Fax: 860-522-2796
E-mail: lpepe@mdmc-law.com

Its Attorneys