UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| McCARTER & ENGLISH, LLP ) | |
| ) | CIVIL ACTION CASE NO. |
| Plaintiff, ) | 3:19-CV-01124 (MPS) |
| ) | |
| VS. ) | |
| ) | |
| JARROW FORMULAS, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | OCTOBER 4, 2019 |

## DEFENDANT JARROW FORMULAS, INC.'s ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

### ANSWER

Defendant Jarrow Formulas, Inc. ("Jarrow") as and for its Answer to the allegations of plaintiff McCarter & English, LLP's ("M&E") Complaint, states as follows:

### NATURE OF PROCEEDINGS

1.  Admit that this is an action for collection of attorneys' fees and disbursements; deny that any amount is due and owing.

2.  Admit.

3.  Admit.

4.  Admit.

5.  Admit that the Court has personal jurisdiction over Jarrow.  As to the remaining allegations,  Jarrow neither admits nor denies the allegations, but leaves M&E to its proof.

6.  Admit that venue is proper in this district.  As to the remaining allegations,  Jarrow neither admits nor denies the allegations, but leaves M&E to its proof.

7.   Admit, except that as to the allegations that Jarrow "regularly turned to McCormick, Paulding & Huber, and, in particular, Attorney Giarratana, for legal representation, including litigation and patent and trademark matters," Jarrow neither admits nor denies the allegations, but leaves M&E to its proof.

8.   Jarrow neither admits nor denies the allegations of Paragraph 8, but leaves M&E to its proof.

9.   Admit that Jarrow was advised of a merger involving Attorney Giarratana.  As to the remaining allegations,  Jarrow neither admits nor denies such allegations, but leaves M&E to its proof.

10.  Jarrow neither admits nor denies the allegations of Paragraph 10, but leaves M&E to its proof.

11.   Admit that Jarrow paid M&E's invoices periodically and that certain invoices were claimed to be discounted. As to the remaining factual allegations,  Jarrow neither admits nor denies the allegations, but leaves M&E to its proof.

12.  Jarrow admits that M&E represented Kean Ashurst in connection with claims made by Caudill Seed & Warehouse Company, Inc. ("Caudill").  As to the allegation that Jarrow "retained" M&E, the terms of any such retention, and the remaining allegations, Jarrow neither admits nor denies the allegations, but leaves M&E to its proof.

13.   Jarrow admits that Caudill sued Ashurst in the Jefferson Circuit Court in Louisville, Kentucky and that the lawsuit was dismissed with prejudice.  As to the remaining allegations, Jarrow neither admits nor denies the allegations, but leaves the M&E to its proof.

14.  Admit.

15.  Admit.

16.  Admit, except state that the trade secrets claim included claims for compensatory damages, treble damages, and attorneys' fees.

17.  Admit.

18.  Deny and assert that judgment on the jury's verdicts entered pursuant to an Order of the federal district court for the Western District of Kentucky (Simpson, J.) dated August 11, 2019 [D.N. 487] which states:  "Judgment is hereby entered in accordance with the aforesaid verdicts."

19.  Admit that Attorney Rechen sent an e-mail as alleged in Paragraph 19.  As to the substance of the e-mail, which speaks for itself and as to the remaining allegations, Jarrow neither admits nor denies the allegations, but leaves the M&E to its proof.

20.  Deny and state that Jarrow Rogovin communicated with M&E by text message following the jury's verdict and thereafter Jarrow responded through counsel.  As to the allegation of "numerous" e-mails and telephone calls and any remaining allegations, Jarrow neither admits nor denies the allegations, but leaves M&E to its proof.

21.  Admit that Jarrow's counsel, Attorney Carol Brophy, sent a letter dated July 12, 2019 to M&E notifying M&E that the attorney-client relationship had terminated.  As to the allegations concerning the date of receipt of the letter, or purporting to restate the contents of the letter, which speaks for itself, and any remaining allegations, Jarrow neither admits nor denies the allegations, but leaves M&E to its proof.

22.  Admit that Attorney Giarratana sent a letter dated July 17, 2019.  Jarrow neither admits nor denies the allegations purporting to restate the contents of the letter, which speaks for itself, but leaves M&E to its proof.

23. Admit that Jonathan Leventhal sent a letter to M&E on or about July 18, 2019. As to the allegations concerning the date of M&E's receipt of the letter and allegations purporting to restate the contents of the letter, which speaks for itself, Jarrow neither admits nor denies the allegations, but leaves M&E to its proof.

24. Jarrow admits that Attorneys Giarratana, Grondahl, Rechen and Hornat filed motions to withdraw their appearances on July 19, 2019. As to the remaining allegations, Jarrow neither admits nor denies such allegations, but leaves M&E to its proof.

25. Admit that Attorney Giarratana sent a letter dated July 19, 2019 to Attorney Brophy. Jarrow neither admits nor denies allegations purporting to restate the contents of the letter, which speaks for itself, but leaves M&E to its proof.

26. Admit that Jarrow Rogovin sent an e-mail dated July 22, 2019. Jarrow neither admits nor denies allegations purporting to restate the contents of the e-mail, which speaks for itself, but leaves M&E to its proof.

27. Admit, but deny that any sum is due and owing.

28. Deny M&E's allegation as to the sum M&E claims to be "due and owing" to M&E. As to the remaining allegations, Jarrow neither admits nor denies the allegations, but leaves M&E to its proof.

29. Deny that any sums are "presently owed" by Jarrow to M&E. Admit that Jarrow has not provided assurances it will pay the sum M&E claims to be owed.

## COUNT I

30. Jarrow repeats and realleges its responses to paragraphs 1-29 as if fully set forth.

31. Denied.

32. Denied.

## COUNT II

33. Jarrow repeats and realleges its responses to paragraphs 1-29 as if fully set forth.

34. Denied.

35. Denied.

## COUNT III

36. Jarrow repeats and realleges its responses to paragraphs 1-29 as if fully set forth.

37.   Admit that Jarrow received legal representation and related services.   As to the allegations that the services had "substantial value," and all remaining allegations, Jarrow neither admits nor denies such allegations, but leaves M&E to its proof.

38.   To the extent that the reference in this paragraph to "the aforseaid legal representation" incorporates the allegations of paragraph 37, Jarrow repeats and realleges its response to paragraph 37.  As to the remaining allegations, including the existence and the terms of any alleged agreement to pay for legal representation and related services, Jarrow neither admits nor denies such allegations, but leaves M&E to its proof.

39.   Denied.

40.   Denied and state that the proper standard of harm or recovery (which harm and right of recovery are denied) is not alleged harm to M&E.

41.   Denied and state that alleged damage (which damage is denied) to McCarter is not the proper standard of harm or recovery.

**PRAYER FOR RELIEF**

Jarrow denies that M&E is entitled to any of the relief, legal or equitable, requested in its Complaint, denies each paragraph of the Prayer for Relief and requests that M&E's action be dismissed in its entirety.

**AFFIRMATIVE DEFENSES**

As and for its Affirmative Defenses to M&E's claims, Jarrow alleges as follows:

**Failure to State a Claim**

To the extent that M&E purports to state a claim based upon alleged harm to M&E and to the extent that M&E purports to state a claim for breach of contract, M&E has failed to state a claim upon which relief may be granted.

**Unclean Hands**

Jarrow asserts that M&E is barred from seeking equitable relief by the doctrine of unclean hands and its own inequitable conduct.

**Setoff and Recoupment**

Jarrow asserts a setoff as to the amounts claimed by M&E to be due and recoupment based upon its prior payments which exceed the value of M&E's services.

**Illegality**

Jarrow asserts that there is no legally enforceable contract between M&E and Jarrow for M&E's services in the matter referred to in the Complaint as the Kentucky Litigation, in that M&E failed to comply with the requirements for a contract for legal services.  M&E failed to provide a written fee agreement or notice before or within a reasonable time after commencing the representation setting forth the scope of the representation, the basis or rate of the fee and expenses

for which Jarrow would be responsible and M&E failed further to notify Jarrow in writing in advance of changes in the basis or rate of the fee or expenses before the fees or expenses to be billed at the higher rates were actually incurred.

**Misrepresentation**

Jarrow asserts that M&E made material misrepresentations in the course of the parties' relationship concerning its bills for legal fees and services and the basis or rate which M&E charges for legal fees and services.

## **COUNTERCLAIMS**

As and for its Counterclaims against McCarter & English, LLP ("M&E"), Jarrow Formulas, Inc. ("Jarrow") asserts as follows:

### **Parties**

1.   The parties to these counterclaims are the counterclaim-defendant, M&E, a limited liability partnership organized and existing under the laws of the State of New Jersey, with offices at various locations in the northeast, including Hartford, Connecticut and the counterclaim-plaintiff, Jarrow, whose state of incorporation and principal place of business are in California.

### **Jurisdiction and Venue**

2.   This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.  The counterclaims also are within the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

3.   The Court has personal jurisdiction over the parties based upon the presence of M&E within the State of Connecticut and its filing of this action in this district and based upon Jarrow

having been properly served with legal process and its business activities within or connected to the State of Connecticut.

4.  Venue is proper in this district pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the counterclaims occurred within this district.

### General Allegations

5.  Jarrow asserts that the billings rendered by M&E are excessive and unreasonable and asserts a setoff and counterclaims to recover excessive sums it has paid to M&E or which are claimed by M&E as due and owing.  Jarrow asserts further that there is no legally enforceable contract between M&E and Jarrow.  Jarrow also asserts that M&E breached its fiduciary duties to Jarrow.  Jarrow also asserts that M&E's billing and collection practices violated the Connecticut Unfair Trade Practices Act.  Jarrow also asserts that M&E failed to meet the standard of reasonably competent attorneys in it representation of Jarrow in the litigation brought against Jarrow by Caudill referred to in the Complaint as the "Kentucky Litigation."

6.  M&E has no retainer agreement with Jarrow for the Kentucky Litigation.

7.  In fact, over the course of 23 years during which Attorney Giarratana provided legal services to Jarrow, the only retainer agreement which appears to exist is the letter dated December 5, 1996, attached as Exhibit A to the Complaint, entered into between Jarrow and the law firm of McCormick, Paulding & Huber LLP ("McCormick") the law firm with which Attorney Giarratana was associated on December 5, 1996, which states specifically that the subject matter of the engagement is a then-pending litigation matter specifically referenced in the December 5, 1996 engagement letter.

8.  Attorney Giarratana's billing rate as set forth in the McCormick engagement letter was

$200 per hour.  There were no billing rates set forth in the McCormick engagement letter for the other M&E attorneys who provided services to Jarrow in the Kentucky Litigation, as they were not associated with McCormick.

9.  The McCormick engagement letter states in part: "Our experience has shown that our relationship will be better served if we begin with a clear understanding of our assignment and our methods of operating, including fees and payment."

10.  Despite this fact, when Attorney Giarratana changed law firms, was hired for additional legal matters, and repeatedly changed his billing rates and the rates of others providing services to Jarrow, he did not enter into a new retainer agreement, nor did he provide notice in writing to Jarrow in advance of providing services at higher rates.

11.  On information and belief, when Attorney Giarratana left McCormick to join the law firm of Cummings & Lockwood, neither Attorney Giarratana nor Cummings & Lockwood entered into a retainer agreement with Jarrow for legal services provided by that firm.

12.  On information and belief, in 2003, when certain Cummings & Lockwood attorneys, including Attorney Giarratana merged with M&E, neither Attorney Giarratana nor M&E entered into a retainer agreement with Jarrow for legal services provided by that firm.

13.  Over the course of time between December 1996 and the termination of M&E's representation of Jarrow in legal matters in 2019, Attorney Giarratana's billing rates, as well as the identities of the persons providing legal services to Jarrow and their billing rates changed on multiple occasions.

14.  At no time between December 1996 and the termination of M&E's representation of Jarrow in legal matters in 2019 did Attorney Giarratana or M&E enter into a new retainer agreement

with Jarrow for legal services.

15.   When the rates or identities of the persons at M&E providing legal services to Jarrow changed, M&E did not provide notice in writing of such changes in advance of providing services at a higher rate.

16.   In particular, M&E's billing rates for two related cases brought in Kentucky by Caudill escalated substantially during the course of the litigation, without advance notice in writing to Jarrow.

17.   In fact, there was an extended period during which Jarrow was billed at widely disparate rates for services provided by the same attorneys in the Kentucky cases, with no fee agreement covering either matter.

18.   Jarrow has caused a forensic audit of M&E's legal fees charged in these cases to be performed, the results of which establish that M&E engaged in inappropriate billing practices which resulted in excessive billing rendered to Jarrow, in an amount which exceeds the amount of M&E's claims against Jarrow in this case.

19.   As a fiduciary relationship exists between Jarrow and M&E, M&E must prove, by clear and convincing evidence, that it has dealt fairly with Jarrow and acted at all times in Jarrow's best interests, including with regard to its management and supervision of the matters in which it provided services to Jarrow, the reasonableness of its legal fees and other charges, and with respect to its billing and collection practices.

20.   M&E failed to take steps needed to properly represent and defend Jarrow as to both liability and damages issues in the Kentucky Litigation which would have been taken by reasonably prudent and competent counsel in similar circumstances.   M&E did not retain an appropriate

damages expert and provide him with information needed to effectively attack Caudill's grossly inflated damages claims.  Nor did M&E secure and provide documentation from Caudill as well as from third parties who possessed relevant information, which would permit Jarrow or its retained expert to prove Caudill's actual research and development costs were a small fraction of the millions of dollars Caudill claimed as damages in the Kentucky Litigation.

21.  M&E also refused repeatedly to communicate properly with and listen to the client's concerns and failed follow or to consider appropriately the advice and instructions of Jarrow's principal, Jarrow Rogovin, including his repeated requests that they formulate an alternative damage analysis and that he be permitted to testify at trial.

22.  Prior to and during the trial, Mr. Rogovin made it known to the M&E attorneys that he felt they ignored him, that they talked over him when he spoke, and that they treated him in a disrespectful and overbearing manner.  At one point during the trial, one of M&E attorney's actually taunted Mr. Rogovin, stating: "What are you going to do, fire us?"  At another point, Attorney Giarratana admitted to Jonathan Leventhal, Jarrow's General Counsel, that he was not reading emails being sent by to him by Mr. Rogovin regarding issues relating to the trial because he claimed he was "too busy."

23.  During the trial, the Court decided that it would permit a key Caudill witness to provide both fact and opinion testimony and allowed the M&E attorneys to depose the witness in the evening after court closed.  M&E did not permit Mr. Rogovin to attend the deposition.  As a result, Mr. Rogovin was not able to hear, analyze and assess the testimony and fully assist in providing information for cross-examination of the witness when court resumed.  To the extent that Jarrow did provide a suggestion as to how the witness could be effectively cross-examined, it was not followed.

24.   The M&E lawyers also failed and refused to make use of a video deposition of a key Caudill witness, obtained at great expense, through which it could have been established that Caudill had never done testing research and development employing the parameters used by Jarrow and that Caudill had failed to timely turn over the evidence supporting this conclusion.

25.   M&E attorney Tom Rechen also promised, in the opening statement he delivered to the jury, that Mr. Rogovin would testify.  M&E failed to deliver on the promise, despite the fact that there were critical issues only Mr. Rogovin could effectively address.

26.   Because he did not testify, except through a pre-trial deposition at which M&E attorneys asked no questions, critical documents which corroborate Mr. Rogovin's  position that he did not rely upon any of Caudill's trade secrets, made conscious efforts to avoid misappropriation of trade secrets, and certainly did not engage in willful or malicious misappropriation, were not admitted at trial.

27.   In addition, although the M&E attorneys regarded Mr. Rogovin at the start of the trial as a critical witness whose testimony was central to Jarrow's defense and specifically told the jurors in opening statement that they would hear from Mr. Rogovin, the attorneys later forcefully advised Mr. Rogovin and insisted that he must not testify and they ignored his requests to testify as the trial progressed.

28.   As a result, Mr. Rogovin was not given the opportunity to provide testimony as to his knowledge of the manner in which Jarrow independently developed its processes and products, and the manner in which Jarrow's products and processes differed in fundamental respects from Caudill's products and processes.

29.   The jurors thus saw Mr. Rogovin in court each day, but were not given the opportunity

to look him in the eye and hear him testify in person as to key issues, including the critical element of his intentions and state of mind to rebut Caudill's claim of willful and malicious misappropriation of trade secrets.

30.  It was critical that, as the founder and principal owner of Jarrow, Mr. Rogovin be given the opportunity to face the jury and explain that he did not intentionally misappropriate any trade secrets, and took affirmative steps to avoid infringement and directed his staff to do the same.  In addition, as a result of the decision not to allow Mr. Rogovin to testify, several key documents in which he expressed his desire and efforts to avoid infringement directly to Caudill's counsel in 2011 were not admitted in evidence.

31.  M&E lawyers insisted that they had a "plan" and that they were going to follow it regardless of Mr. Rogovin's wishes, instructions or directions.

32.  The underlying Kentucky Litigation was conducted with three M&E partners, local Kentucky counsel and Jarrow's General Counsel all sitting at counsel table and, for most of the trial an M&E associate (billing at $400 per hour) in the gallery or working at the local counsel's office.

33.  Jarrow's local counsel, Joel Beres, is a highly qualified intellectual property attorney with an undergraduate degree in economics and more than 25 years of experience practicing law in the field of intellectual property.  Nevertheless, the M&E attorneys did not permit Attorney Beres to play any meaningful role at the trial.

34.  When Jarrow's General Counsel asked M&E lawyers what he and Attorney Beres could do to help, he was told: "Keep Jarrow [Rogovin] away from us."

35.  The combined billing rates of the three M&E partners, M&E associate and local counsel totaled nearly $2,500 per hour.   M&E's billed fees for the month of June 2019 alone were

$582,713.00 (not including disbursements of $178,00.00)—nearly $20,000 in legal fees per day for each and every day of the thirty days in the month of June.

36.  M&E's bills for legal fees rendered to Jarrow for the Kentucky Litigation exceeded $6.5 million and were more than 50% higher than the $4.2 million in fees charged by *winning* team representing Caudill.

37.  M&E engaged in several types of inappropriate billing practices, including excessive bills that were the product of overstaffing, inefficiency, inappropriate timekeepers, inappropriate billing rates, inappropriate disbursements, and other objectionable billing practices which caused M&E's bills to exceed the reasonable value of their services to Jarrow and require substantial reductions in M&E's billings, such that the amount of M&E's excessive billings exceeds the amount claimed by M&E as due and owing in this case.

38.  One example regarding disbursements involves expenses for meals.  After a particularly expensive dinner with the trial team, Jarrow's General Counsel was assured that Jarrow would not be charged for the dinner.  Yet M&E's June bill reflects a $1,300 charge for this dinner; as well as more than $6,700 in meal charges for the month of June alone.

39.  Although M&E retained a damages expert, it had become evident from the expert's deposition the expert did not have appropriate experience and was not provided nor asked to examine appropriate source documents to undermine the factual basis for Caudill's damages claims. Jarrow's retained damages expert was not called to testify at trial and the jury was not presented with an alternative calculation to Caudill's inflated calculation of its alleged damages.

40.  Caudill's  damages claim for research and development costs was predicated largely on research and development line items shown on tax returns and financial statements company-wide,

over a span of many years, in a company that had six divisions, in a trade secrets case in which Caudill claimed six trade secrets, and prevailed in recovering damages as to only one. The jury never heard a breakdown or allocation of the research and development costs and never was presented with an alternative calculation.  M&E's damages expert never investigated the allocation or breakdown of Caudill's alleged research and development costs and did not use source documents to verify the numbers on the tax returns and financial statements.

41.  M&E also admitted that they erroneously believed the jury would not decide the issue of willful and malicious misappropriation.  This fact was revealed when M&E made its motion for judgment as a matter of law and omitted a discussion of willful an malicious misappropriation in their brief and in oral argument on the motion.  When asked by the trial judge whether he wished to address the issue, Attorney Giarratana stated that it was his understanding that the jury would not decide this issue.

42.  M&E thus failed to structure its trial presentation during the plaintiff's case to properly address this issue.  Indeed, even after the trial judge pointed out M&E's oversight regarding this issue, they failed to structure the presentation of the defense case to properly address this critical issue—which the jury decided against Jarrow.

43.  Because of the manner in which M&E decided to present Jarrow's defense, at the end of the trial Caudill's counsel was able to tell the jury that Jarrow Rogovin had been in the courtroom every day and had never taken the stand to tell them he did not misappropriate Caudill's trade secrets and did not act willfully, maliciously and deceptively to Caudill and was able to characterize the denials presented by Jarrow's counsel as "just the lawyer talking."

44.  As to damages, Caudill's counsel was able to state in closing that Jarrow did not put on

evidence of how long it would have taken Jarrow to develop its products and processes by proper means and to state further, without fear of contradiction, that there was no evidence providing an alternative to Caudill's research and development damages calculation.

45.  On June 26, 2019, the jury rendered its verdict in the Kentucky Litigation, finding Jarrow liable for compensatory damages in the amount of $2,427,605 and finding Jarrow liable for willful and malicious misappropriation of Caudill's trade secrets, which permits Caudill to seek an award of treble damages and attorney's fees from the court.

46.  On July 18, 2019, Caudill filed its motion for exemplary damages in the Kentucky Litigation, seeking $4,855,210 in punitive damages (2 X the compensatory award), $4,203,201 in attorney's fees, and $1,873,903 in interest (plus *per diem* interest of $410.72 for each day after June 26, 2019), for a total award of more than $13 million.

**Count One** - Excessive Billing; Overpayment and Recoupment

47.  The allegations of paragraphs 1-46 are repeated and realleged as if fully set forth herein.

48.  The bills rendered by M&E in this matter for fees and expenses are excessive and unreasonable.

49.  If M&E's bills are reduced to reasonable charges, Jarrow has previously paid M&E more than M&E is owed for such services.

50.  As a consequence, M&E is not entitled to recover any amount on its claims against Jarrow and Jarrow is owed a substantial refund, in an amount to be proven at trial, based upon the sums it has paid to date.

**Count Two**  - Unjust Enrichment

47.  The allegations of paragraphs 1-46 are repeated and realleged as if fully set forth herein.

48.  Jarrow has paid M&E more than the reasonable value of its services.

49.  As a result, M&E has received a benefit which in equity and good conscience it must not be permitted to retain.

50.  As a consequence, M&E is not entitled to recover any amount on its claims against Jarrow and M&E should be ordered to disgorge and return to Jarrow the amount that M&E has unjustly retained.

**Count Three** - Breach of Fiduciary Duty

47.  The allegations of paragraphs 1-46 are repeated and realleged as if fully set forth herein.

48.  As legal counsel and advisor to Jarrow over an extended period of time, Attorney Giarratana and M&E stood in a fiduciary relationship of trust and confidence with Jarrow and owed to Jarrow the obligation to act in its best interests at all times, to keep Jarrow fully informed as to all matters which may be of importance, and to meet the highest standards of honesty, full disclosure and loyalty.

49.  By its overbilling and other improper billing practices, including its failures to properly communicate with Jarrow concerning matters of importance and its failures to honestly and fully disclose matters relating to billing, M&E breached its fiduciary duties to Jarrow.

50. As a consequence, Jarrow has suffered financial harm in that it has been billed excessively, has overpaid for services and has been required to defend this action seeking to collect additional sums that are unwarranted and are not properly due and payable; Jarrow has been required to expend sums for attorneys and consultants to defend this action; and Jarrow has incurred other expenses and harm to its business, including damage to its relationship with its primary lender.

**Count Four** - Legal Malpractice

47.   The allegations of paragraphs 1-46 are repeated and realleged as if fully set forth herein.

48.  In its legal representation of Jarrow in the Kentucky Litigation, M&E owed Jarrow a duty of care to act as reasonably competent and diligent attorneys and to use the skill and knowledge ordinarily possessed by attorneys under similar circumstanced and to exercise a reasonable degree of skill and care in providing professional legal services.

49.   M&E was negligent and failed to take the steps required to provide Jarrow with reasonably diligent and competent legal advice and representation, failed to act as reasonably prudent and competent attorneys and committed acts and omissions which constituted legal malpractice, as set forth above, including: the failure to recognize that Jarrow Rogovin was a critical witness who must testify as to a number of key points; the failure to adequately consult and communicate with the client; the failure to retain an appropriate damages expert and engage in adequate discovery to obtain evidence regarding Caudill's actual research and development costs and provide an alternative damages calculation; the failure to meet the standard of care in rebutting the damages testimony of Caudill's damages expert; the failure to present testimony and evidence to show that Jarrow did not willfully and maliciously misappropriate any trade secrets.

50.   As a result of M&E's breaches of their duty of care and professional negligence, Jarrow has suffered damages.

**Count Five -** Unfair Trade Practices

51.   The allegations of paragraphs 1-50 of Count One, paragraphs 1-50 of Count Two, paragraphs 1-50 of Count Three and paragraphs 1-50 of Count Four are repeated and realleged as if fully set forth herein.

51.  At all relevant times, M&E has been engaged in the trade or business of providing legal services.

52.  M&E's acts and practices involving billing and collection of fees for its services and disbursements constitute the entrepreneurial aspects of the practice of law.

53.  M&E's billing and collection practices as alleged herein constitute unfair and deceptive acts and practices involving the entrepreneurial aspects of the practice of law in that: M&E failed to provide Jarrow with written retainer agreements; M&E failed to provide written notifications of changes in the basis or rates for services in advance of providing services at a higher rate; M&E billed for excessive and inappropriate disbursements; M&E billed for services other than legal services and for disbursements that were not reasonable, and were not agreed to be and were not properly reimbursable; M&E billed at widely differing rates for the same attorneys, in the same time frame, in related matters; M&E made misrepresentations regarding billing rates and discounts; M&E unilaterally raised its billing rates during the course of the engagement without taking appropriate steps to ensure that such rate increases were properly communicated, accepted and were fair to Jarrow; M&E raised its rates based upon the expectation that the charges would be reimbursed by insurance and would be subject to the billing rules of the insurance company and continued to charge such higher rates when the insurer declined to cover and pay the charges, while ignoring the billing rules upon which such rates were predicated; and M&E rendered excessive bills that were the product of inappropriate billing and collection practices, including all of the foregoing, as well as overstaffing, inefficiency, inappropriate timekeepers, inappropriate billing rates and inappropriate disbursements.

54.  M&E has made use of confidential information which it learned during the course of

representing Jarrow as its counsel and in a fiduciary capacity, as well as the financial stress and pressure caused by M&E's excessive billing and its failures to render competent legal services, in order to apply pressure and exert leverage on Jarrow to pay the sums M&E claims to be due and owing, when such sums are not in fact properly due and owing.

55.  As a result of M&E's unfair trade practices, Jarrow has suffered an ascertainable loss and damages.

**Count Six** - Setoff

47.  The allegations of paragraphs 1-46 are repeated and realleged as if fully set forth herein.

48.   To the extent that M&E proves it is entitled to a recovery on its claims, which Jarrow expressly denies, any sum awarded to M&E is subject to a setoff in the amount of any recovery by Jarrow on its counterclaims, including any recovery of compensatory damages, punitive damages, attorney's fees and costs.

**Prayer for Relief**

**WHEREFORE,** Jarrow demands:

1.  Compensatory damages.

2.  A setoff against the amounts claimed by the plaintiff.

2.  Disgorgement of benefits constituting an unjust enrichment.

3.  Interest.

5.  Punitive Damages, attorney's fees and costs pursuant to Connecticut General Statutes § 42-110g.

6.  Such other and further relief as in law or equity may appertain.

**DEFENDANT/COUNTERCLAIM-PLAINTIFF
JARROW FORMULAS, INC.**

By /s/ Jeffrey J. Tinley (ct00765)

Jeffrey J. Tinley
Tinley, Renehan & Dost, LLP
255 Bank Street ~ Suite 2-A
Waterbury, CT 06702
Telephone: 203-596-9030
Facsimile: 203-596-9036
Federal Bar No.: ct00765
E-Mail: jtinley@tnrdlaw.com

**DEFENDANT/COUNTERCLAIM PLAINTIFF DEMANDS A TRIAL BY
JURY AS TO ALL CLAIMS AND  COUNTERCLAIMS SO TRIABLE.**

## <u>CERTIFICATION</u>

     I hereby certify that on this 4th day of October, 2019, a copy of the foregoing Answer, Affirmative Defenses and Counterclaims was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF system.


<u>/s/ Jeffrey J. Tinley</u> (ct00765)

Jeffrey J. Tinley
Tinley, Renehan & Dost, LLP
255 Bank Street ~ Suite 2-A
Waterbury, CT 06702
Telephone: 203-596-9030
Facsimile: 203-596-9036
Federal Bar No.: ct00765
E-Mail: jtinley@tnrdlaw.com