IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| McCARTER & ENGLISH, LLP | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No. 3:19-CV-01124 (MPS) |
| | ) | |
| vs. | ) | |
| | ) | |
| JARROW FORMULAS, INC. | ) | August 13, 2020 |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff, McCarter & English, LLP ("McCarter"), as and for its Second Amended Complaint against Jarrow Formulas, Inc. ("Jarrow"), alleges as follows:

### NATURE OF PROCEEDINGS

1. This is an action for collection of attorneys' fees and disbursements incurred in connection with legal services provided by McCarter to Jarrow in the District of Connecticut and in the Western District of Kentucky.

### PARTIES

2. McCarter is a limited liability partnership organized and existing as a law firm under the laws of the state of New Jersey with multiple offices in the northeast, including an office at CityPlace I, 185 Asylum Street, Hartford, Connecticut 06103.

3. Jarrow is a California corporation with an office and principal place of business at 1824 South Robertson Boulevard, Los Angeles, California 90035. Jarrow is in the business of manufacturing, distributing and selling dietary supplements throughout the United States, including in the District of Connecticut.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

5. This Court has personal jurisdiction over Jarrow because (i) for more than twenty years it requested, contracted for, and obtained legal services from law firms in the District of Connecticut, including but not limited to McCarter; (ii) the legal services at issue in this lawsuit were substantially rendered in the District of Connecticut; and (iii) over the course of more than twenty years, the Chairman of Jarrow regularly travelled to the District of Connecticut to meet with Jarrow's lawyers in connection with Jarrow's receipt of legal services.

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because Jarrow conducts business in this district, Jarrow's Chairman regularly traveled into the District of Connecticut in order to receive legal services, and the legal services that Jarrow contracted for that are the subject of the unpaid fees were substantially rendered in Connecticut.

**FACTUAL ALLEGATIONS**

7. Beginning in or about December 1996, Jarrow engaged Attorney Mark D. Giarratana, then a partner in the Connecticut law firm of McCormick, Paulding & Huber, LLP, to represent Jarrow in connection with litigation brought against Jarrow and other defendants in the United States District Court for the District of Connecticut. The terms of the engagement were memorialized in a letter dated December 5, 1996. Thereafter Jarrow Formulas regularly turned to McCormick, Paulding & Huber and, in particular, Attorney Giarratana, for legal representation, including litigation and patent and trademark matters.

8. In or about August 1998, Attorney Giarratana joined the Connecticut law firm of Cummings & Lockwood, LLC in its Hartford, Connecticut office. Jarrow was advised that Attorney Giarratana had changed firms, and Jarrow elected to engage Cummings & Lockwood and, in particular, Attorney Giarratana, for continued legal representation.

9. In or about September 2003, some of the lawyers in Cummings & Lockwood, including Attorney Giarratana, joined McCarter. Jarrow was advised of the merger and elected to continue to be represented by McCarter. For the following 15+ years, until July 12, 2019, McCarter represented Jarrow Formulas in connection with intellectual property matters (including patent and trademark prosecutions), litigation matters (including patent, trademark, trade secret, contract, insurance coverage and class action disputes), and various contract drafting and negotiation matters. During its attorney-client relationship with Jarrow, McCarter opened over 400 matter files, all of which were handled by Attorney Giarratana and other lawyers, primarily out of McCarter's Hartford, Connecticut office.

10. From the beginning of its attorney-client relationship with Jarrow, McCarter routinely issued monthly invoices in arrears for legal services rendered and disbursements incurred during the prior month. McCarter billed Jarrow on a time-devoted basis (at hourly rates in increments of one-tenth of an hour) plus out-of-pocket costs or disbursements. McCarter's invoices to Jarrow always included a clear description of the specific tasks performed, the identity of each lawyer, paralegal or project clerk performing the task or tasks, the date on which the task or tasks were performed, the time devoted by each timekeeper to each task or tasks, the hourly rate charged with respect to each timekeeper, and the total fees and disbursements due for the immediately preceding month.

11. Jarrow paid McCarter's invoices periodically, albeit at times with a negotiated discount when McCarter requested its account to be brought current, typically at or near McCarter's fiscal year end.

12. Beginning in August 2011, McCarter was engaged by Jarrow to represent Jarrow and its new contract consultant, Kean Ashurst, in connection with claims made by Caudill Seed & Warehouse Company, Inc. ("Caudill Seed") against Mr. Ashurst and, later, Jarrow, stemming from Jarrow's contractual relationship with Mr. Ashurst, a former employee of Caudill Seed.

13. Caudill Seed sued Kean Ashurst in the Jefferson Circuit Court in Louisville, Kentucky. McCarter obtained a complete dismissal with prejudice of all claims in the state court action for no consideration.

14. Caudill Seed sued Jarrow in the United States District Court for the Western District of Kentucky (the "Kentucky Litigation"). The claims against Jarrow included: tortious interference; mail/wire fraud – theft by deception; unjust enrichment; extortion – violation of the Hobbs Act; fraud – outrageous conduct; violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1861-1864; and violation of the Kentucky Uniform Trade Secrets Act, KRS § 365.880 *et. seq.* Caudill Seed claimed compensatory damages in the amount of $12 Million plus treble damages and attorneys' fees.

15. McCarter obtained a dismissal of all claims against Jarrow except for the trade secrets claim.

16. Beginning on June 3, 2019, the trade secrets claim against Jarrow was tried before a jury in the United States District Court for the Western District of Kentucky (the "Kentucky Jury Trial"). Attorney Giarratana, together with Attorneys Eric E. Grondahl, Thomas J. Rechen and John Cordani, all of McCarter's Hartford Office, relocated to Louisville for a period of

4

approximately four weeks to try the case, together with Jarrow's local Louisville, Kentucky counsel, Attorney Joel T. Beres of Stites & Harbison, PLLC.

17. On June 26, 2019, the jury returned a verdict in favor of Caudill Seed in the amount of $2,427,605. The jury further found willful and malicious misappropriation by Jarrow.

18. As of the date of this Amended Complaint, judgment has not entered in the Kentucky Litigation.

19. On July 10, 2019, Attorney Rechen, sent an e-mail to Jarrow Rogovin (Chairman and President of Jarrow), Ben Khowong (Chief Executive Officer and Chief Financial Officer), Jonathan Leventhal (In-House Counsel), and Mary Grace Reyes (an employee in Jarrow's accounts payable department), advising that there was an outstanding balance owed to McCarter in the amount of $1,239,306.82, of which $1,201,366.45 related to the Kentucky Litigation. The outstanding balance was for legal services dating back to April 17, 2019. In addition, Attorney Rechen's e-mail forwarded McCarter's new invoice in the amount of $760,780.80 for fees and disbursements incurred during the month of June in connection with the Kentucky Jury Trial. As to the outstanding balance, McCarter requested that Jarrow Formulas make arrangements for immediate payment. As to the new invoice for the Kentucky Jury Trial, McCarter requested that it be paid promptly and, in all events, within thirty days.

20. Jarrow failed to respond to Attorney Rechen's e-mail. Further, since the date of the jury verdict to July 22, 2019, Jarrow's Chairman and its In-House Counsel failed and refused to respond to numerous e-mails and telephone calls, including voicemails specifically requesting them to return the call.

21. On or about July 15, 2019, McCarter received, via Federal Express, a letter dated July 12, 2019 from Attorney Carol Brophy of the law firm Steptoe & Johnson LLP in San

Francisco, California, purporting to terminate the attorney-client relationship between Jarrow and McCarter and directing the disposition of McCarter's client files relating to Jarrow. The letter made no mention of Attorney Rechen's July 10, 2019 e-mail and no mention or indication of Jarrow's intent regarding its outstanding balance with McCarter.

22. On July 17, 2019, Attorney Giarratana responded to Attorney Brophy's July 12, 2019 letter, requesting that the client, Jarrow, confirm in a writing signed by a duly authorized representative of Jarrow, that Jarrow (i) authorized the transfer of files as directed in Attorney Brophy's letter, (ii) was terminating the attorney-client relationship between McCarter and Jarrow, and (iii) was directing McCarter to file motions to withdraw as counsel in the Kentucky Litigation.

23. On July 18, 2019, McCarter received, via e-mail, a letter from Jarrow's In-House Counsel, Jonathan Leventhal, confirming Jarrow's termination of the attorney-client relationship between Jarrow and McCarter and directing the disposition of McCarter's client files relating to Jarrow. Again, the letter made no mention of Attorney Rechen's July 10, 2019 e-mail and no mention or indication of Jarrow's intent regarding its outstanding balance with McCarter.

24. Attorney Leventhal's letter did not address whether McCarter should file motions to withdraw as counsel in the Kentucky Litigation. Nonetheless, since Jarrow unequivocally terminated the attorney-client relationship, Attorneys Giarratana, Grondahl and Rechen, as well as their associate, Attorney Alexander Hornat, filed motions to withdraw their appearances on July 19, 2019. These motions were granted on July 25, 2019.

25. Also on July 19, 2019, in a letter to Attorney Brophy, Attorney Giarratana responded to the letters received from Attorney Brophy and Attorney Leventhal. In his letter, Attorney Giarratana addressed once again the outstanding attorneys' fees and costs owed to

6

McCarter and requested that Jarrow "advise immediately what steps have been taken to satisfy Jarrow Formulas obligations to McCarter & English, LLP and when payment may be expected."

26. Mr. Jarrow Rogovin, Chairman and President of Jarrow, responded via e-mail on July 22, 2019, advising McCarter that he was unwilling to pay McCarter's outstanding invoice for fees and disbursements relating to the Kentucky Litigation; expressing his disappointment with the adverse verdict rendered in that case; and second guessing some of the trial strategies employed by McCarter in that litigation. In that e-mail, Jarrow promised to pay within a month only the outstanding McCarter invoices unrelated to the Kentucky Litigation.

27. After Mr. Rechen's July 10, 2019 e-mail, McCarter further invoiced Jarrow Formulas on August 19, 2019 for $11,128.00 in attorneys' fees and disbursements incurred during June and July 2019 in connection with the Kentucky Litigation prior to receiving the July 12, 2019 letter from Attorney Brophy. On September 9, 2019, McCarter invoiced Jarrow Formulas $2,564.90 for transferring documents, files and information to its successor counsel in the Kentucky Litigation.

28. As of the date of this Complaint, the sum of $2,044,686.77 is due and owing to McCarter for legal services rendered and disbursements advanced by McCarter for the benefit of Jarrow in the Kentucky Litigation and various unrelated intellectual property matters.

29. Jarrow has failed and refused to pay McCarter the sums presently owed in the amount of $2,044,686.77 and has provided no assurance of its intention to pay, and has reneged on its promise to pay within a month the outstanding McCarter invoices unrelated to the Kentucky Litigation, which now total $61,723.93 and remain unpaid.

## COUNT I (BREACH OF CONTRACT, INCLUDING WILLFUL AND WANTON BREACH)

30. Paragraphs 1-29 above are incorporated as if fully set forth in this Count I.

31. Jarrow has breached its contract with McCarter for the provision of legal services.

32. Jarrow's breach arises from improper motives, an intent to injure McCarter and/or a reckless indifference to the rights of McCarter.

33. Before trial of the Kentucky Litigation began, Jarrow's President and Chairman, Mr. Jarrow Rogovin, specifically instructed Jarrow's Chief Executive Officer to "put off the lawyer bills," knowing at the time of the instruction that there was an outstanding balance due of $727,659.41, and that a huge commitment of additional resources, including out-of-pocket disbursements, was about to be made by McCarter on Jarrow's behalf.  McCarter was never told of this instruction or of Jarrow's intent not to pay McCarter's bills.

34. During the period of the trial, Jarrow deceived McCarter by Jarrow's general counsel telling McCarter that it deserved to be paid in full and that he was doing all that he could to bring Jarrow's account with McCarter current, as McCarter had requested.  In fact, this was untrue, in that Jarrow had already decided not to pay McCarter any money after June 1, 2019.

35. At the time of Mr. Rogovin's instruction, Jarrow, and specifically Mr. Rogovin, were aware that, whether Jarrow misappropriated trade secrets of Caudill Seed or not, the case was difficult to win before a jury because it indisputably involved troublesome facts and witnesses including, but not limited to, the transmittal of (i) confidential information of Caudill Seed to Jarrow Formulas by Kean Ashurst both before and after he was hired as a consultant by Jarrow Formulas to work on a product that was substantially similar to a product offered by Caudill Seed, and (ii) a process developed by Kean Ashurst at Caudill Seed for water-extracting and spray-drying myrosinase.

8

36. Jarrow was further aware that Mr. Rogovin had engaged in numerous vicious written attacks on Caudill Seed, its principal owner, Dan Caudill, and Caudill Seed's counsel in the Kentucky litigation, all of which put Jarrow at risk for a verdict for willful and malicious misappropriation of Caudill Seed's trade secrets and an award of punitive damages.

37. In fact, as a result of the foregoing and more, Jarrow, and specifically Mr. Rogovin, admitted that Caudill Seed "quite rightly sees huge numbers" and that Caudill Seed could recover $10 Million in damages from Jarrow.

38. Recognizing the foregoing realities Jarrow, and specifically Mr. Rogovin, instructed McCarter that the case should be "over-engineered" by McCarter and that the case "should be handled as if it is for the appellate record."

39. During the trial, Jarrow, through Mr. Rogovin and Jarrow's general counsel, communicated to McCarter and to third parties Jarrow's belief that McCarter was "doing a fantastic job," "totally dominating the courtroom," that it was "an honor to be a part of the trial team," that the case was "positioned very well with the jury," and similar words of praise. At the same time Jarrow, and specifically its general counsel, recognized that the verdict could "still go against us" and that there could be a partially adverse verdict.

40. Nonetheless, by the date the jury in the Kentucky Litigation returned its verdict awarding damages for only one of Caudill Seed's six alleged trade secrets, and limiting its award of damages to only approximately twenty-five percent of the amount claimed by Caudill Seed, Jarrow, and specifically Mr. Rogovin, had secretly decided that Jarrow would make McCarter responsible for the jury's verdict and would refuse to pay not only the outstanding fees and disbursements already owed to McCarter when the trial began, but McCarter's "trial bill" as well; *i.e.,* the substantial attorneys' fees and out-of-pocket costs incurred by McCarter for the

period of the trial.

41.     Thereafter, in fact, Jarrow instructed its executive management team to have no further contact whatsoever with McCarter.

42.     Jarrow kept the foregoing decisions from McCarter.  Nonetheless, Jarrow requested over the next several weeks that McCarter continue to produce work product for Jarrow's benefit, including a draft motion for judgment as a matter of law, a timeline of key filing deadlines, an analysis of when a supercedeas bond might be required, and an analysis of the jury's damages award, including explanations regarding the strategy for defending damages at trial.  All of the foregoing caused McCarter to continue to incur fees and costs during a period when it did not know that Jarrow intended to fire McCarter and refuse to pay for its substantial and well-rendered services.

43.     Jarrow's actions and omissions were at all relevant times willful, wanton, malicious and with reckless indifference to the rights of McCarter.

44.     McCarter has suffered damages as a result of Jarrow's breaches, including its willful and wanton conduct.

## COUNT II (ACCOUNT STATED)

45.     Paragraphs 1-29 above are incorporated as if fully set forth in this Count II.

46.     McCarter rendered to Jarrow and Jarrow received invoices for legal services and disbursement and statements of its account with McCarter, which have been retained by Jarrow for an unreasonable period of time without objection and without payment such that they now represent an account stated.

47.     McCarter has been damaged as a result of Jarrow's failure to pay.

10

## COUNT III (UNJUST ENRICHMENT/QUANTUM MERUIT)

48. Paragraphs 1-29 above are incorporated as if fully set forth in this Count III.

49. Jarrow knowingly accepted and received legal representation and related services having substantial value.

50. Jarrow agreed to pay McCarter for the aforedescribed legal representation and related services.

51. Jarrow has wrongly failed and refused to pay for the reasonable value of the aforedescribed legal representation and related services and has, therefore, been unjustly enriched.

52. Jarrow's failure of payment is to the severe financial harm and detriment of McCarter.

53. McCarter has been damaged as a result of Jarrow's failure to pay.

## PRAYER FOR RELIEF

WHEREFORE, McCarter English, LLP prays for relief as follows:

1. Compensatory damages in excess of $75,000 exclusive of interest and costs;

2. Pre-judgment interest pursuant to Conn. Gen. Stat. § 37-3a;

3. Costs and expenses, if any, to which McCarter & English, LLP may be entitled by statute or court rule;

4. An award of common law punitive damages for Jarrow's willful, wanton and/or malicious breach of the contract;

5. Such other and further legal or equitable relief as the court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF ALL CLAIMS SO TRIABLE**

Dated:  August 13, 2020	**RESPECTFULLY SUBMITTED,**

**PLAINTIFF**
**McCARTER & ENGLISH, LLP**


By: */s/      Louis R. Pepe*  (ct04319)
　　Louis R. Pepe
　　Federal Bar No. CT04319
　　James G. Green, Jr.
　　Federal Bar No. CT05961
　　McElroy, Deutsch, Mulvaney & Carpenter LLP
　　One State Street, 14th Floor
　　Hartford, CT 06103
　　Phone:  860-522-5175
　　Fax:  860-522-2796
　　Email: lpepe@mdmc-law.com
　　　　　jgreen@mdmc-law.com

**CERTIFICATION**

I hereby certify that on August 13, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electric filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF system.

                                      */s/*    *Louis R. Pepe*  (ct04319)
                                      Louis R. Pepe

LRP/M1691/1001/1681635v1
08/13/20-HRT/RMQ