## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MCARTER & ENGLISH, LLP<br><br>*Plaintiff*,<br><br>v.<br><br>JARROW FORMULAS, INC.<br><br>*Defendant* | No. 3:19-cv-01124 (MPS) |

## <u>RULING ON MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS</u>

Plaintiff McCarter & English, LLC ("McCarter") has brought this action against its former client, Jarrow Formulas, Inc. ("Jarrow"), to recover attorney's fees and disbursements incurred in connection with legal services provided by McCarter. Jarrow has responded by denying McCarter's allegations, asserting its own affirmative defenses, and setting out eight counterclaims against McCarter: (i) excessive billing; overpayment and recoupment (count one); (ii) unjust enrichment (count two); (iii) breach of fiduciary duty (count three); (iv) legal malpractice (count four); (v) negligent misrepresentation (count five); (vi) intentional misrepresentation (count six); (vii) unfair trade practices (count seven); and (viii) setoff (count eight).[1] McCarter moves to dismiss all of Jarrow's counterclaims under Fed. R. Civ. P. 8(a) and 10(b) on the ground that Jarrow's pleading amounts to an improper "shotgun pleading." In the alternative, McCarter argues that counts one, four, five, six, and seven should be dismissed under Fed. R. Civ. P. 12(b)(6) and 9(b). For the following reasons, McCarter's motion to dismiss is granted as to count one and denied as to counts four, five, six, and seven .

---

[1] The operative pleading for purposes of this ruling is Jarrow's answer to complaint with amended counterclaims (ECF No. 91) filed on October 30, 2019.

## I.       BACKGROUND

McCarter, a law firm, filed its original complaint in July 2019, alleging that Jarrow, a company in the business of manufacturing, distributing, and selling dietary supplements, owes McCarter $2,044,686.77 for legal services rendered in connection with litigation that took place in Kentucky, as well as a variety of unrelated intellectual property matters in which McCarter represented Jarrow. (ECF No. 174 at ¶¶ 2, 3, 28). The Kentucky litigation consisted of a jury trial in the United States District Court for the Western District of Kentucky in which Caudill Seed & Warehouse Company sought judgment against Jarrow for, among other claims, tortious interference, fraud, extortion, and violation of the Kentucky Uniform Trade Secrets Act, KY. REV. STAT. ANN. §§ 365.880-365.900 (West 2020). (*Id.* at ¶ 14). The jury returned a verdict against Jarrow in the amount of $2,427,605, and further found willful and malicious misappropriation by Jarrow. (*Id.* at ¶ 17). Following the jury trial, McCarter contacted Jarrow regarding the outstanding balance that McCarter claimed Jarrow owed for legal expenses related to the Kentucky litigation. (*Id.* at ¶ 19). Shortly thereafter, McCarter received a letter from Jarrow purporting to terminate the attorney-client relationship. (*Id.* at ¶ 21). According to McCarter, Jarrow's failure to pay the outstanding balance of $2,044,686.77 entitles McCarter to damages and equitable relief for breach of contract (including willful and wanton breach), account stated, and unjust enrichment/quantum meruit. (*Id.* at ¶¶ 28, 30-53).

Jarrow has asserted eight counterclaims against McCarter based on the following allegations, which I assume to be true for purposes of this motion. (ECF No. 91 at 31-36).

Over the course of 23 years, Attorney Giarratana "was involved in providing legal services to Jarrow." (*Id.* at ¶ 7). During that time Attorney Giarratana worked at several different law firms, ending up at McCarter. (*Id.* at ¶¶ 11, 12, 15). "[T]he only engagement letter or fee

agreement which appears to exist is a letter dated December 5, 1996 . . . entered into between Jarrow and . . . the law firm with which Attorney Giarratana was associated on that date." (*Id.* at ¶ 7). In 2003, Attorney Giarratana was working at the law firm Cummings & Lockwood when "certain Cummings & Lockwood attorneys, including Attorney Giarratana merged with [McCarter]." (*Id.* at ¶ 15). "Neither Attorney Giarratana nor [McCarter] entered into a fee agreement or retainer letter with Jarrow for legal services to be provided by that firm." (*Id.* at ¶ 17). "Over the course of time between the time that pending matters were transferred to [McCarter] in 2003, to the date of termination of [McCarter's] representation of Jarrow in legal matters in 2019, Attorney Giarratana's billing rates and the identities and billing rates of the persons involved in legal services to Jarrow changed on multiple occasions." (*Id.* at ¶ 18).

In 2011, McCarter undertook "representation of [Jarrow's contract consultant] Kean Ashurst in the matter of *Caudill Seed & Warehouse Co. v. Kean H. Ashurst*, Jefferson Circuit Court, Case No. 11-CI-03438). . . ." (*Id.* at ¶ 22). In 2013, McCarter "undertook to represent Jarrow in the closely related federal court case of *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.,* Civil Action No. 3:13-CV-82-CRS. . . ." (*Id.* at ¶ 24). In both matters, "there was no retainer agreement or engagement letter between [McCarter] and Jarrow which identified the matter for which [McCarter] had been engaged . . . to [represent] Jarrow which sets forth the basis or rate for the legal fees to be charged to Jarrow, the disbursements for which it will be responsible, the identities of the attorneys and other professionals who will provide services to Jarrow, their billing rates, or any other material terms of the engagement." (*Id.* at ¶ 24). "During the course of the Kentucky federal case, the hourly rates charged to Jarrow for the services of Attorneys Giarratana, Grondahl, and Robinson increased and the hourly rates of other timekeepers who worked on the Kentucky federal case also increased from their initial rates at

the inception of the litigation." (*Id.* at ¶ 26). "At no time during the course of [McCarter's]

representation of Jarrow in the Kentucky federal case did [McCarter] provide notice in writing of

such changes in advance of providing services at higher rates." (*Id.* at ¶ 27). "[T]he hourly rates

charged to Jarrow for the services . . . in the Kentucky federal case increased substantially, but

the hourly rates charged to Jarrow for their services in the closely related Kentucky state court

case remained at their lower initial rate." (*Id.* at ¶ 28). "Jarrow has caused a forensic audit of

[McCarter's] legal fees charged in these cases to be performed, the result of which establish that

[McCarter] engaged in inappropriate billing practices which resulted in excessive billing

rendered to Jarrow, in an amount which exceeds the amount of [McCarter's] claims against

Jarrow in this case." (*Id.* at ¶ 30).

In 2013, "McCarter received a letter from Liberty [Insurance]," an insurance company

that Jarrow had contacted "to determine whether Jarrow would be provided a defense." (*Id.* at ¶¶

32, 39). McCarter "considered [the letter] an acknowledgement of defense . . . pursuant to which

Liberty agreed to provide a defense to Jarrow in the federal case under a reservation of rights."

(*Id.* at ¶ 39). "Upon Liberty's approval of [McCarter's] retention, it was the expectation of

[McCarter] and Jarrow that [McCarter] would send Liberty bills for services and that Liberty

would pay bills [for] services rendered to Jarrow in the Kentucky federal case." (*Id.* at ¶ 46). "In

fact, [McCarter] did send its invoices to Liberty for payment for a period of approximately six

months." (*Id.* at ¶ 47). The estimated budget that McCarter sent to Liberty "showed a budget

range for legal fees through and including the [s]ummary [j]udgment phase of $527,411.50 to

$848,171.50." (*Id.* at ¶¶ 49, 50). The "actual legal fees billed through and including summary

judgment exceeded the budget amount by more than $1 million." (*Id.* at ¶ 51).

4

The "invoices which Attorney Giarratana sent to Liberty had been altered in several material respects from the actual invoices which had been sent to and paid by Jarrow." (*Id.* at ¶ 52). First, they "eliminate[d] descriptions of services and billing charges relating to the Kentucky state court case, which had been combined in the actual billing with the time and billing charges for the Kentucky federal court case. . . ." (*Id.* at ¶ 53). Second, "[o]n the timekeepers' summary page of each bill, the billing rates were altered to correspond with higher rates Liberty had approved <u>after</u> the bills had been both rendered to Jarrow and paid by Jarrow at lower rates." (*Id.* at ¶ 54). Third, "Attorney Giarratana . . . enclosed an invoice dated July 11, 2013, which purported to be the invoice rendered to Jarrow for time entries in March 2013," but in "reality . . . had been issued to Jarrow on April 15, 2013 and paid by Jarrow on June 24, 2013, once again at the lower initial rates charged by [McCarter] for the Kentucky federal court litigation"—"a rebill." (*Id.* at ¶¶ 56-58). "This deceptive conduct has continued and [McCarter] has continued to seek to obscure and distort the history of its billing for the Kentucky federal case and the altered billing and rebilling issued to Liberty." (*Id.* at ¶ 59). At the end of 2013, "Liberty advised [McCarter] that it had given further consideration to its coverage position and issued a denial of coverage. As a result, Liberty never paid any of [McCarter's] invoices for the Kentucky federal case." (*Id.* at ¶ 75).

In 2019, when the Kentucky federal court trial was "scheduled to begin in the first week in June, Attorney Giarratana began to apply pressure on Jarrow to bring its account current." (*Id.* at ¶ 78). Jarrow requested "a [15%] discount of [McCarter's] fees, a practice which had occurred on a regular basis in September of each year, near the end of [McCarter's] fiscal year." (*Id.* at ¶ 80). Attorney Giarratana's responded that Jarrow was "already receiving a 38% discount . . . and the maximum additional discount [McCarter] was permitted to offer [was] 5%, provided Jarrow

Formulas pays its outstanding invoices and is current heading into trial on June 3." (*Id.* at ¶ 81). "Attorney Giarratana's statements concerning a 38% or a 43% discount were false and were made, together with his reminders of the imminently impending start of trial, intentionally to induce Jarrow to pay the outstanding invoices on false pretenses." (ECF No. 91 at ¶ 94). In 2014, Attorney Giarratana emailed McCarter's collections analyst regarding one of Jarrow's requests for a discount. (*Id.* at ¶ 86). The email stated, "They [Jarrow] do this every year. I'm going to pretend to ask you and then say no, the finance committee won't let you. Like I do every year." (*Id.*). At most, "Jarrow had received an 11% discount from [McCarter's] so-called 'standard rates.'" (*Id.* at ¶ 98).

In 2019, the Kentucky federal jury trial began and McCarter "failed to provide competent legal services to Jarrow. . . ." (*Id.* at ¶ 106). McCarter "failed to recognize that Jarrow Rogovin was a critical witness who must testify as to a number of key points . . . fail[ed] to retain an appropriate damages expert and engage in adequate discovery to obtain evidence regarding . . . research and development . . . [to] provide an alternative damages calculation . . . fail[ed] to rebut the damages testimony [of opposing counsel's] damages expert . . . [and] fail[ed] to present testimony and evidence to show that Jarrow did not willfully and maliciously misappropriate any trade secrets." (*Id.* at Count Four, ¶ 136). "[McCarter] also admitted that they erroneously believed the jury would not decide the issue of willful and malicious misappropriation" and "thus failed to structure its trial presentation . . . to properly address this critical issue—which the jury decided against Jarrow." (*Id.* at ¶¶ 129, 130). "On June 26, 2019, the jury rendered its verdict . . . finding Jarrow liable for compensatory damages in the amount of $2,427,605 and finding Jarrow liable for willful and malicious misappropriation of Caudill's trade secrets, which permits Caudill to seek an award of treble damages and attorney's fees from the court." (*Id.* at ¶ 133).

6

"[McCarter's] bills for legal fees rendered to Jarrow for the Kentucky Litigation exceeded $6.7 million." (*Id.* at ¶ 124).

## II.    DISCUSSION

### A.    Motion to Dismiss "Shotgun Counterclaims"

McCarter's first contention is that Jarrow's pleading must be deemed an impermissible "shotgun pleading" and dismissed in its entirety under Fed. R. Civ. P. 8(a) and 10(b). According to McCarter, Jarrow's pleading "requires meaningful legal analysis, but that undertaking is frustrated by Jarrow's approach to pleading its claims. All 129 allegations of fact . . . are incorporated by reference into each of the counterclaim's eight counts with no further substantive factual allegations in any of those counts." (ECF No. 95 at 12). Contrary to McCarter's argument, dismissal of Jarrow's counterclaims is not warranted on this basis.

Rule 8(a)(2) requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) provides that claims or defenses must be stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." One form of a pleading that some courts have found to violate these rules is referred to as a "shotgun pleading." A shotgun pleading contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-22 (11th Cir. 2015). Shotgun pleadings also refer to those that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," and pleadings in which the causes of action are not separated out into different counts. *Id.*

7

McCarter points out several examples of cases that involved a shotgun pleading. (ECF No. 95 at 12-13). In *Manbeck v. Micka*, 640 F. Supp. 2d 351, 366 (S.D.N.Y. 2009) the complaint listed "vague and conclusory allegations . . . making it extremely difficult to discern the precise nature of the claim[s]." In *Alexander v. City of Syracuse*, No. 5:17-CV-1195, 2018 WL 6591426, (N.D.N.Y 2018) the plaintiff's complaint mistakenly used the same label to refer to two different groups of theories of liability and also "failed to connect his various theories of liability to the particular defendant or defendants allegedly responsible for each violation." *Id.* at *3.  As a result, the defendants were left "confused about which one of them ha[d] been sued (and for what)." *Id*; *see also Croons v. N.Y. State Office of Mental Health*, 18 F. Supp. 3d 193, 199 (N.D.N.Y. 2014) (describing "fourteen causes of action . . . incorporat[ing] all of the factual allegations preceding it as well as adopting all of the allegations of each preceding count" making it "virtually impossible to know which allegations of fact were intended to support which claim(s) for relief").

Jarrow's counterclaim is, however, a far cry from the rambling, confused pleadings described in these cases.  First, it is brought by a single party – Jarrow – against a single counterclaim defendant – McCarter.  There is no difficulty in discerning the target of the allegations.  Second, its organizational scheme is adequate to provide notice to McCarter of the legal claims alleged against it and the factual grounds upon which those claims rest. Jarrow's pleading lists 130 paragraphs of general allegations. (ECF No. 91 at 7-31). The general allegations are organized chronologically from the time when legal representation commenced to the time when the jury trial in Kentucky concluded and the fee dispute between the two parties began. (*Id.*) The general allegations are then followed by eight separate counts, each labeled with a different theory of liability. (*Id.* at 31-38). Under each theory of liability, Jarrow repeats and

realleges the general allegations and then lists several additional paragraphs of allegations

pertinent to that particular theory of liability. (*Id.*) For example, count two alleges unjust

enrichment by repeating and realleging the general allegations and then stating that Jarrow "has

paid [McCarter] more than the reasonable value of its services. As a result, [McCarter] has

received a benefit which in equity and good conscience it must not be permitted to retain. As a

consequence, [McCarter] is not entitled to recover any amount on its claims against Jarrow and

[McCarter] should be ordered to disgorge and return to Jarrow the amount that [McCarter] has

unjustly retained." (*Id.* at ¶¶ 135-37). Each count follows that same organizational pattern,

identifying the theory of liability and listing additional allegations to support each theory.

McCarter can hardly argue that it lacks fair notice of the claims Jarrow has alleged, and

McCarter cites no authority suggesting that a pleader need trace each factual allegation to a

particular legal theory.  I therefore deny the motion to dismiss on the ground that the

counterclaims are in "shotgun" form and decline McCarter's request for a more definite

statement.

**B.     Motion to Dismiss Counts One, Four, Five, Six, and Seven**

        McCarter moves, in the alternative, to dismiss five of the eight counterclaims under Fed.

R. Civ. P. 12(b)(6) and Rule 9(b).  Under Fed. R. Civ. P. 12(b)(6), a complaint must allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ray v. Watnick*, 688 F. App'x 41 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted)). While the Court must

"draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of*

*Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving

party's motion if "a complaint is based solely on wholly conclusory allegations and provides no

factual support for such claims. . . ." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D.

Conn. 2004) (citations and internal quotation marks omitted)).[2]  Under Rule 9(b), a party

alleging fraud "must state with particularity the circumstances constituting fraud …."  In the

Second Circuit, this means the party alleging fraud must "(1) specify the statements that the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent." *Wood v. Applied

Research Assocs.,* 328 F. App'x 744, 747 (2d Cir.2009) (internal quotation marks omitted).

1.     **Count One: Excessive Billing, Overpayment and Recoupment**

Count one of Jarrow's counterclaim pleading seeks relief for "excessive billing,

overpayment and recoupment." (ECF No. 91 at 31). It alleges that the "bills rendered by

[McCarter] in this matter for fees and expenses are excessive and unreasonable. If [McCarter's]

bills are reduced to reasonable charges, Jarrow has previously paid [McCarter] more than

[McCarter] is owed for such services. As a consequence, [McCarter] is not entitled to recover

any amount on its claims against Jarrow and Jarrow is owed a substantial refund, in an amount to

be proven at trial, based upon the sums it has paid to date." (*Id.* at ¶¶ 135-37). McCarter argues

that there is no cause of action for excessive billing, overpayment or recoupment under

---

[2] In ruling on McCarter's motion to dismiss, I considered only the pleadings and not any extrinsic evidence. I, therefore, decline Jarrow's suggestion in its opposition brief (ECF No. 97 at 10-11) to convert McCarter's motion to dismiss to one for summary judgment under Fed. R. Civ. P. 12(d). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2002) (When a District Court is "presented with matters outside the pleadings, rule 12(d) affords two options. The court [can] exclude the extrinsic documents" or convert the motion to dismiss "to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56.").

Connecticut law. To evaluate this argument, I break the allegations down into: (a) excessive billing; and (b) overpayment and recoupment.

a.   **Excessive Billing**

McCarter states that there is no cause of action for excessive billing under Connecticut law and that "if Jarrow has any right to recovery at all based on the allegations it incorporates into [c]ount [o]ne . . . that right is in breach of contract," which is not pled.[3] (ECF No. 95 at 18). Jarrow cites no cases, and I have found none, that suggest there is a cause of action for "excessive billing" under Connecticut law. Because I must draw all reasonable inferences in favor of Jarrow, however, I also consider whether a claim for excessive billing could be construed as asserting some other recognized cause of action. *See Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 87 A.3d 534, 539-40 (Conn. 2014) (explaining that claims may be brought against attorneys in breach of contract or tort).

Jarrow has disavowed any claim for breach of contract. In its counterclaims, Jarrow repeatedly states that "[a]t no time did . . . [McCarter] enter into a fee agreement or retainer letter with Jarrow for legal services." (ECF No. 91 at ¶¶ 19, 22, 24).

Jarrow's allegation of excessive billing could also be construed as a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). CONN. GEN. STAT. ANN. §§ 42-110a et seq. (West 2020). Allegations against attorneys for excessive or incorrect billing are frequently brought under CUTPA. *See, e.g.*, *Collins v. Rogers*, No. FSTCV166028664S, 2019 WL 5856464, at *6 (Conn. Super. Ct. 2019) (plaintiff's sixth count under CUTPA limited to allegations of excessive billing or inaccurate billing); *Alderman & Alderman v. Millbrook*

---

[3] The parties have assumed Connecticut law controls. I assume the same and decline to perform any choice of law analysis.

*Owners' Ass'n, Inc.*, No. CV000802857S, 2001 WL 1160737, at *4 (Conn. Super. Ct. 2001) (count twelve asserted a violation of CUTPA for excessive billing, among other allegations). But if I construe Jarrow's excessive billing claim as a violation of CUTPA, it is duplicative. Count seven already alleges a CUTPA violation. (ECF No. 91 at 32, 34 ¶ 155) ("[McCarter] billed for excessive services."). I therefore grant McCarter's motion to dismiss Jarrow's excessive billing claim.

### b.    Overpayment and Recoupment

In Count One, Jarrow alleges that McCarter "is not entitled to recover any amount on its claims against Jarrow and Jarrow is owed a substantial refund … based upon the sums it has paid to date." (ECF No. 91, Count One, ¶ 137). McCarter argues that the claim should be dismissed because recoupment can only be asserted defensively and cannot seek monetary relief greater than the amount that the complainant affirmatively seeks. (ECF No. 95 at 19).

"Recoupment . . . refers to the defendant's right, in the same action, to cut down the plaintiff's demand either because the plaintiff has not complied with some cross obligation of the contract on which he or she sues or because the plaintiff has violated some legal duty in the making or performance of that contract. . . ." *Fadner v. Commissioner of Revenue Services*, 917 A.2d 540, 548 (Conn. 2007). "For a valid contract defense such as recoupment to be asserted, however, there first must be an enforceable contract between the parties. It is well settled in this state that there must be mutuality of obligation between the parties to a contract for the contract to be enforceable." *Sloan v. Kubitsky*, 712 A.2d 966, 968 (Conn. App. 1998)

I conclude that Jarrow's counterclaim for overpayment and recoupment fails for three reasons. First, as a "contract defense," recoupment presupposes "an enforceable contract between the parties," *Sloan*, 712 A.2d at 968, which, as noted, Jarrow has disavowed. Second, Jarrow's

allegations seek to do more than cut down an obligation; they seek to recover a sum greater than McCarter has alleged Jarrow owes. Third, in count two, Jarrow makes a substantively identical allegation, i.e., that McCarter "is not entitled to recover any amount on its claims against Jarrow and [McCarter] should be ordered to disgorge and return to Jarrow the amount that [McCarter] has unjustly retained." (ECF No. 91, Count Two, ¶ 137). As McCarter notes in its motion to dismiss, "[i]f there is a cause of action pleaded in count one, it is for unjust enrichment, which is Jarrow's second count." (ECF No. 95 at 19). I therefore grant McCarter's motion to dismiss count one and Jarrow may pursue these allegations under count two.

## 2.    Count Four: Legal Malpractice

In count four, Jarrow alleges legal malpractice. (ECF No. 91 at ¶ 135). Jarrow's allegations all stem from McCarter's representation of Jarrow in the jury trial that took place in Kentucky. (*Id.*) Jarrow alleges that McCarter failed to put on a critical witness, failed to engage in adequate discovery to obtain evidence regarding Caudill's actual research and development costs, failed to rebut the testimony of Caudill's damages expert, and failed to present evidence that Jarrow did not willfully and maliciously misappropriate any trade secrets. (*Id.* at ¶ 136).

McCarter moves to dismiss Jarrow's legal malpractice counterclaim on two grounds: failure to state a claim upon which relief can be granted and ripeness. (ECF No. 95 at 20, 23). First, McCarter alleges that Jarrow's legal malpractice claim should be dismissed because it fails to state a claim for relief that is plausible under Rule 12(b)(6). Each of Jarrow's allegations, according to McCarter, "relates to the trial team's strategic decisions and fall within the attorney's authority to manage the litigation and the trial. . . . Furthermore the [c]ounterclaim fails to provide an explanation of how McCarter's alleged negligence proximately caused Jarrow any damage. . . . This is precisely the kind of threadbare legal conclusion that falls short of the

*Twombly* and *Iqbal* plausibility standards and is, therefore, undeserving of any presumption of truth." (ECF No. 95 at 26-27).

"In general, the [complainant] in an attorney malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." *Grimm v. Fox*, 33 A.3d 205, 211 (Conn. 2012) (citation omitted). "Legal malpractice may include an attorney's failure to exercise ordinary care in preparing, managing, and presenting litigation. . . . But [d]ecisions of which witnesses to call, what testimony to obtain or when to cross-examine almost invariably are matters of judgment. . . . As such, the wisdom and consequences of these kinds of tactical choices made during litigation are generally matters beyond the ken of most jurors. And when the causal link is beyond the jury's common understanding, expert testimony is necessary." *Bozelko v. Papastavros*, 147 A.3d 1023, 1031 (Conn. 2016) (citations and quotation marks omitted).

McCarter relies on *Bozelko* to assert that Jarrow's allegations all fall within the category of tactical choices rather than malpractice. (ECF No. 94 at 25). McCarter's reliance on *Bozelko* is unpersuasive for two reasons. First, the Connecticut Supreme Court explicitly stated that legal malpractice "may include an attorney's failure to exercise ordinary care in preparing, managing and presenting litigation." *Id.* Jarrow's complaint alleges just that—McCarter "failed to take the steps required to provide Jarrow with reasonably diligent and competent legal advice and representation, failed to act as reasonably prudent and competent attorneys and committed acts and omissions which constituted legal malpractice." (ECF No. 91 at Count Four, ¶ 136). Second, McCarter asserts that to prove causation, Jarrow would have to prove what verdict the jury would have returned but for the malpractice alleged. (ECF No. 95 at 27). That assertion directly contradicts the *Bozelko*  court's explanation that to establish causation, "the objective . . . is to

14

determine what the result should have been (an objective standard) not what the result would have been by a particular judge or jury (a subjective standard)." *Bozelko*, 147 A.3d at 1032. While Jarrow will likely need to rely on expert testimony to prove causation, it has adequately pled the claim.

Next, McCarter asserts that Jarrow's legal malpractice claim should be dismissed for lack of subject matter jurisdiction. McCarter contends that Jarrow's legal malpractice claim is "not ripe because the Kentucky litigation is still pending" and a final judgment has not been entered. (ECF No. 95 at 20). In June 2019, "the jury rendered its verdict . . . finding Jarrow liable for compensatory damages . . . and finding Jarrow liable for willful and malicious misappropriation of Caudill's trade secrets, which permits Caudill to seek an award of treble damages and attorney's fees from the court." (ECF No. 91 at ¶ 133). The Court entered judgment against Jarrow in the sum of $2,427,605. (ECF No. 97 at 24).  In August 2019, the Court "granted leave to file a renewed [judgment as a matter of law]." (*Id.*). On June 9, 2020 the judge denied Jarrow's motion for judgment as a matter of law or new trial. (*Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, No. 3:13-cv-00082, ECF No. 531 (W.D. Ky. May 31, 2020)).[4] At the time that McCarter filed its motion to dismiss Jarrow's counterclaims, Jarrow's motion for judgment as a matter of law was still pending. It has now been decided against Jarrow and thus it is clear that Jarrow has lost the case in the district court and will be required to pay substantial monies unless the judgment is vacated or reversed on appeal. And even if Jarrow wins on appeal, the additional costs it will have incurred in litigating the appeal (as well as those it incurred in

---

[4] "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger*, 146 F.3d 66, 70 (2d Cir. 1998) (citation and internal quotation marks omitted).

litigating the motion for judgment as a matter of law) are sufficient indicators of harm to make the claim ripe. *See Knight v. Furlow*, 553 A.2d 1232, 1235 (D.C. App. 1989) ("Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue," including "attorney's fees and costs expended as a result of an attorney's alleged malpractice"); *New Falls Corp. v. Lerner*, 2006 WL 2801459, *2 (D. Conn. Sept. 28, 2006) (in legal malpractice case, actionable harm includes "the cost of additional litigation in order to recover on [the] original claim" (internal quotation marks omitted)).

McCarter requests in the alternative that I stay the malpractice claim until the underlying litigation is resolved. (ECF No. 95 at 23). It is true that Caudill's motion for damages including prejudgment interest, attorney's fees and final judgment remains pending before the district court in Kentucky. (*Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, No. 3:13-cv-00082, ECF No. 464 (W.D. Ky. May 31,2020)). If it remains pending by the time of trial in this case, the parties will have an opportunity to discuss appropriate measures, such as a severance of the trial on one or more damages issues, to take account of this circumstance. I therefore deny McCarter's motion to dismiss count four.

**3.      Counts Five and Six: Negligent Misrepresentation, Intentional Misrepresentation**

McCarter moves to dismiss counts five and six on the ground that they fail to satisfy Fed. R. Civ. P. 9(b)'s particularity requirement. As noted above, Rule 9(b) requires the pleader to "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001) (citation and internal quotation marks omitted). "Though the Second Circuit has not explicitly ruled on whether negligent

misrepresentation claims must satisfy Rule 9(b), many district courts in this Circuit have so

required." *Karazin v. Wright Medical Technology, Inc.*, 2018 WL 4398250 *6 (D. Conn. Sept.

14, 2018) (citing cases). I assume, without deciding, that Rule 9(b) applies to the negligent

misrepresentation claims at issue here.

     Jarrow has specified the statements it claims are false or misleading (the discount), has

given particulars as to the respect in which it contends the statements were fraudulent (McCarter

was not providing the discounts it fraudulently represented to provide for legal services), has

stated when and where the statements were made (May 2019 and 2014 via email), and has

identified those responsible for the statements (Attorney Giarratana and McCarter's collection

analyst). Jarrow's allegations suffice to put McCarter on notice of the fraud claims and satisfy

Rule 9(b)'s particularity requirement. I therefore deny McCarter's motion to dismiss counts five

and six.

### 4.      Count Seven: CUTPA

     Finally, McCarter moves to dismiss Jarrow's CUTPA counterclaim. McCarter asserts that

Jarrow's allegations should be dismissed because they "do not involve the entrepreneurial

aspects of professional practice; they involve the lawyers exercise of professional judgment

concerning how a litigation matter should be staffed, litigated, and ultimately billed." (ECF No.

95 at 33).

     "CUTPA prohibits unfair methods of competition and unfair or deceptive acts or

practices in the conduct of trade or commerce." *Metcalf v. Fitzgerald*, 214 A.3d 361, 379 (Conn.

2019). "[T]he entrepreneurial aspects of the practice of law, such as attorney advertising, remain

well within the scope of CUTPA." *Updike, Kelly & Spellacy, P.C. v. Beckett*, 850 A.2d 173

(Conn. 2004). In *Updike*, the Connecticut Supreme Court concluded that "the conduct of a law

firm in obtaining business and negotiating fee contracts" falls within the "entrepreneurial aspects of the practice of law." *Id.* The Connecticut Appellate Court has stated that "a challenge to the content of a [fee] agreement and the firm's billing practices" "arguably fall[s] under the entrepreneurial aspect of practicing law." *Anderson v. Schoenhorn*, 874 A.2d 798, 804 (Conn. App. 2005). As noted above, trial courts in Connecticut have recognized CUTPA claims against lawyers for excessive billing. *See Collins*, 2019 WL 5856464, at *6; *Millbrook Owners' Ass'n, Inc.*, 2001 WL 1160737, at *4.

Jarrow alleges that "[McCarter's] billing and collection practices as alleged herein constitute unfair and deceptive acts and practices involving the entrepreneurial aspects of the practice of law in that: [McCarter] failed to provide Jarrow with written retainer agreements; [McCarter] failed to provide written notifications of changes in the basis or rates for services in advance of providing services at a higher rate; [McCarter] billed for excessive and inappropriate disbursements; [McCarter] billed for services other than legal services and for disbursements that were not reasonable, and were not agreed to be and were not properly reimbursed; [McCarter] billed at widely differing rates for the same attorneys, in the same time frame, in related matters; [McCarter] made misrepresentations regarding billing rates and discounts. . . . As a result of [McCarter's] unfair trade practices, Jarrow has suffered an ascertainable loss and damages." (ECF No. 91 at ¶¶ 155, 157).

Jarrow has alleged factual support to state a plausible claim that McCarter's conduct within the entrepreneurial aspects of legal representation violates CUTPA. Specifically, Jarrow has alleged unfair and deceptive conduct in negotiating fees and unfair and deceptive conduct in billing practices. I therefore deny McCarter's motion to dismiss count seven.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiff's motion to dismiss, ECF No. 91, is GRANTED IN PART AND DENIED IN PART. The defendant's counterclaim for excessive billing, overpayment and recoupment (count one) is dismissed. The defendant's claims for legal malpractice (count four), negligent misrepresentation (count five), intentional misrepresentation (count six), and unfair trade practices (count seven) may proceed.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
        August 27, 2020