UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x

McCARTER & ENGLISH, LLP          No. 3:19-CV-1124 (MPS)

vs.                              JULY 6, 2023

JARROW FORMULAS, INC.            JURY TRIAL

- - - - - - - - - - - - - - - - x


EXCERPTS FROM THE TESTIMONY OF MARK GIARATANNA


450 Main Street
Hartford, Connecticut

BEFORE:  THE HONORABLE MICHAEL P. SHEA, U.S.D.J.

AND A JURY


COURT REPORTER:  Julie L. Monette, RDR, CRR, CRC
(860) 212-6937

Proceedings recorded by mechanical stenography, transcript produced by computer.

APPEARANCES:


FOR THE PLAINTIFF:

      McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
          One State Street, 14th Floor
          Hartford, Connecticut 06103
      BY:  LOUIS R. PEPE, ESQUIRE
          JAMES G. GREEN, JR., ESQUIRE
          JAMES A. BUDINETZ, ESQUIRE
          DAVID W. CASE, ESQUIRE


FOR THE DEFENDANT:

      BARTON LLP
          100 Wilshire Boulevard, Suite 1300
          Santa Monica, California 90401
      BY:  BERNARD M. RESSER, ESQUIRE

      BARTON LLP
          711 Third Avenue, 14th Floor
          New York, New York 10017
      BY:  JAMES E. HEAVEY, ESQUIRE
      BY:  MICHAEL C. WARD, ESQUIRE

(Excerpts from the Direct Examination

of Mark Giaratanna by Mr. Pepe:)

\*   \*   \*   \*   \*

Q   Why did you quote a different rate to Ms. Linda Lin of Liberty?

A   Because we were starting a new litigation.  I had realized -- when we had looked at the rate information, I had realized that the rates we were charging Jarrow Formulas were extremely old and it was receiving a huge discount.  Those rates went back to -- for Eric Grondahl and I -- went roughly back to 2009.

Q   Were these rates acceptable to Linda Lin?

A   Yes.

Q   Did you, at or about this time, have any discussions with Jarrow Rogovin about increasing the rate from one that had been held for some three years to a higher rate?

A   I did.  I did.  I spoke with him -- I had two conversations with him, actually three conversations with him, one on March 21 when I first received the letter from Liberty Insurance.  I had another conversation with him on April 4th and then another conversation with him on this day that I sent this e-mail out on April 19th.

          THE COURT:  Let's get another question now.

Q   (By Mr. Pepe) Yup.  How do you remember those dates?

A   Because I -- they're recorded in my time entries.

Q   Okay.  In any one of those three conversations, were they by person or by telephone?

A   They were by telephone.

Q   In any one of those three conversations, did you discuss with Mr. Rogovin the increase in the rates as you've just described?

A   I did.

Q   When -- when was that, as best you recollect?

A   As best I recollect, it occurred either on April 4th or on April 19th when I had those two phone conversations with him.

Q   And as best you recollect, what did you say to him and what did he say to you concerning this issue?

A   I had indicated to him that Jarrow Formulas had been receiving a substantial discount.  We hadn't changed our partner rates since several years prior.  I believe they went back to 2009, that we were embarking on this, you know, this litigation.  We couldn't hold our rates, keep our rates down at that low level, and we needed to increase them and we were going to charge our standard rates.

I also indicated to him that if the insurance company does not reimburse, Jarrow Formulas will be responsible for paying these -- for paying our bills because the insurance company took the case on a reservation of rights and that we would be billing both Jarrow Formulas and the insurance company.  In the event that the insurance company didn't pay

the bills, Jarrow Formulas would be responsible for the bills.

Q   In either one of those conversations, did you tell him what the new rates would be?

A   Yes.

Q   Okay.  535 per hour for you and 485 for Mr. Grondahl?

A   Yes.

*     *     *     *     *

*     *     *     *     *

Q   On the two invoices we just looked at, PTX 104 and 105 with the redactions --

A   Yeah.

Q   -- had those been sent to Jarrow Formulas at or about the time they were prepared in January and February?

A   Yeah, but without the changes.

Q   Without the redactions.

A   Yeah.

Q   When Ms. Lin asked for the copy of all invoices, were there invoices that had been sent by McCarter to JFI that came after the two separate matter numbers were created?

A   Yes.

Q   And what did you do with those invoices?  Did you send those to Ms. Lin also?

A   We did, but we needed to -- there was an error in the

invoices originally. They weren't billed at the correct rates. We needed to --

THE COURT: Okay, okay. Another question.

Q (By Mr. Pepe) And when you say -- I'm talking now about the invoices that were based on the new matter number; correct?

A Yes.

Q All right. What did you mean the rates were not billed at the correct number?

A They were -- I discovered in June of 2013 that we had sent bills out to Jarrow Formulas on the new matter number with the old rates, not the new rates that were agreed to and reflected in the insurance company correspondence in my discussion with Mr. Rogovin.

Q Now, let me interrupt you. But I think you said you discussed this with Mr. Rogovin and he agreed to the higher rates, I think you said, in April.

A Yes.

Q Correct?

A Yes.

Q You gave two dates; correct?

A Yes, April 4th or 19th.

Q But now is your testimony those agreed-upon new rates, 535 for you, 485 for Grondahl, did not get included in the bill?

A They did not, not until after June.

Q Explain what happened.

A   So I explained that we were in California on a patent case. We were there in April.  We had -- I'm sorry -- in May, came back in April, then had to go back and complete that trial in June.  So we were extremely busy during that period from March through June.  Sometimes when that occurs -- I was also extremely busy on other matters.  Sometimes when that occurs, the administrative work for clients gets pushed to the side because ultimately we're a client service business.  We need to handle the client services first.

When I got back from that trip in June, I had realized, when I was looking at the information, realized that we had sent out bills to Jarrow Formulas for three months that included the old rates, not the new agreed-upon rates.

Q   Okay.  What, if anything, did you do about that?

A   Well, I asked my billing coordinator, I sent her an e-mail indicating that she had sent the bills out for Attorney Grondahl and me at the wrong rates.  And I asked her to correct the rates and reissue those bills.

Q   And did she do so?

A   She did do that.

Q   And what, if anything, did you do with respect to those bills and Linda Lin's request for copies of all invoices?

THE COURT:  When you say "those bills," I'm confused.

MR. PEPE:  I'm sorry.

Q   (By Mr. Pepe) With respect to those three bills that you said went out at the incorrect rates --

A   Yeah.

Q   -- I heard you testify your billing coordinator corrected the rates and sent them out.

A   Yes.

Q   To whom?

A   They were sent out to Jarrow Formulas.

Q   Did you also send them to Liberty Mutual -- Liberty Insurance?

A   Yes.

                    *    *    *    *    *


                    *    *    *    *    *

Q   To whom was this bill, PTX 110, dated July 11, for March time, to whom was that sent?

A   Mr. Rogovin.

Q   And to Liberty?

A   It was also sent to Liberty.  Not until August, beginning of August.

                    *    *    *    *    *


                    *    *    *    *    *

Q   (By Mr. Pepe) Exhibit 113, sir, is calling your attention to -- that is a December 29, 2013, e-mail from Mr. Rogovin to

Mr. Rechen and to you and to Mr. Grondahl.  Do you see that?

A   Yes.

Q   And he states -- and the subject is:  "Letter from Liberty's Duane Morris Counsel Re:  Non-coverage."  What was that referring to?

A   That's referring to the letter that was received from Liberty International's outside attorneys, Duane Morris, denying coverage.

Q   He states, quote, "It appears to be a dead issue."

It goes down further.  Instead -- and the next paragraph says, "This is basically what the matter is and certainly I do not see a court seeing it any other way," period, end quote.

Is that e-mail the -- reflect the decision you testified Mr. Rogovin made about not pursuing this further?

A   Yes.

Q   And did you follow his instructions and drop it?

A   We did.

*    *    *    *    *

C E R T I F I C A T E

MCCARTER & ENGLISH, LLP VS. JARROW FORMULAS, INC.

NO. 3:19-CV-1124 (MPS)

I, Julie L. Monette, RDR, CRR, CRC, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/S/ JULIE L. MONETTE

_____
Julie L. Monette, RDR, CRR, CRC
Official Court Reporter
450 Main Street - Clerk's Office
Hartford, Connecticut 06103
(860) 212-6937