UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - x

McCARTER & ENGLISH, LLP                 No. 3:19-CV-1124 (MPS)

vs.                                     JULY 7, 2023

JARROW FORMULAS, INC.                   JURY TRIAL

- - - - - - - - - - - - - - - - - x

<u>EXCERPTS FROM THE TESTIMONY OF MARK GIARATANNA</u>

450 Main Street
Hartford, Connecticut

BEFORE:  THE HONORABLE MICHAEL P. SHEA, U.S.D.J.

AND A JURY

COURT REPORTER:  Julie L. Monette, RDR, CRR, CRC
(860) 212-6937

Proceedings recorded by mechanical stenography, transcript produced by computer.

APPEARANCES:


FOR THE PLAINTIFF:

       McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
           One State Street, 14th Floor
           Hartford, Connecticut 06103
      BY:  LOUIS R. PEPE, ESQUIRE
          JAMES G. GREEN, JR., ESQUIRE
          JAMES A. BUDINETZ, ESQUIRE
          DAVID W. CASE, ESQUIRE


FOR THE DEFENDANT:

       BARTON LLP
           100 Wilshire Boulevard, Suite 1300
           Santa Monica, California 90401
      BY:  BERNARD M. RESSER, ESQUIRE

       BARTON LLP
           711 Third Avenue, 14th Floor
           New York, New York 10017
      BY:  JAMES E. HEAVEY, ESQUIRE
      BY:  MICHAEL C. WARD, ESQUIRE

(Excerpts from the testimony of Mark Giaratanna)

Examination by Mr. Resser:

\*    \*    \*    \*    \*

Q    During your representation of Jarrow Formulas in 2013, M&E increased the hourly rates it was charging to Jarrow Formulas; correct?

A    For some of the timekeepers but not all.

Q    And you charged Jarrow Formulas that increased rate after July of 2013 and reissued bills at the higher rates; right?

A    For some of the timekeepers, not all, that's correct. That's what I testified to.

Q    And some of those timekeepers included you and Mr. Grondahl; right?

A    That -- those were the two timekeepers that were changed, if I recall correctly, no others.

\*    \*    \*    \*    \*


\*    \*    \*    \*    \*

Q    (By Mr. Resser) PTX 17, which we looked at earlier, that had the revised hourly rate on page 13; correct?

A    That's correct.

Q    And your testimony is that you sent out the January, February, March, and April bills at the wrong rate and then discovered in June that there was an error?

A    No.  You're restating my testimony, sir.  I didn't say I

sent out January and February at the wrong rate. If you listen to my deposition, we sent out March, April, and May at the incorrect rates and we reissued those bills. That's what I -- that's what I, I believe, clearly explained in my deposition.

Q So the March bill that you sent out at the wrong rate, you reviewed that bill with the same process that you've described to this jury where you spend a day or two over the weekend after the pro forma, or the draft bill comes out, you review it, you look for fairness, you make any corrections for fairness, and then you approve the bill and it goes out to the client; right?

A Yeah. That one bill's not a whole day, but that's one of many bills I review as part of that process.

Q And as part of you reviewing your own bills, you missed the fact that your rate was supposedly an error on that bill; correct?

A Yes.

Q And the same thing happened for the April bill, which you reviewed in May; correct?

A Yes.

Q And you reviewed that bill. You spent more than an hour, more than two hours reviewing that bill?

A I don't recall.

Q And you went through that bill, and you didn't notice that the rate was in error on that bill. Isn't that correct?

A    That's correct.

Q    And then for the May bill that you went through in June, you went through that and you approved that bill again at the 405 an hour rate for you and the 395 an hour rate for Mr. Grondahl; correct?

A    I approved that bill, yes.

Q    And you didn't catch the error on that bill either at that point.

A    I didn't catch it until June.

Q    And that -- and when you reissued the March bill in July, PTX 17, that had your time at 535 an hour instead of 405 an hour; correct?

A    The July bill had 535.  That was the agreed rate, yes.

    MR. RESSER:  Move to strike.  I was just asking about the rate, not any agreement.

    THE COURT:  Well, I'm going to let it stand.  Go ahead.

Q    (By Mr. Resser) That increase from 405 an hour to 535 an hour, that increased your hourly rate more than 30 percent, sir, didn't it?

A    It increased the hourly rate I was charging Jarrow Formulas by that amount, yes.

Q    And then you billed Jarrow Formulas at 535 an hour for your time going back to January 2013 and throughout the representation of Mr. Jarrow Formulas in the Kentucky case

through 2019; correct?

A   Incorrect.  I didn't bill --

Q   You didn't rebill January and February?

A   That's correct.

Q   But you did rebill March, April, and May at the higher rates; correct?

A   At the -- at the 535 agreed rate, yes.

Q   In addition, Mr. Grondahl was originally billed at the rate of 395 an hour in January 2013 in the Ashurst case.

A   I don't have it in front of me, but that sounds fair.

Q   You want to see Exhibit 530 again?  We'll put that up.

A   It's up to you.

Q   Mr. Campos, can we see Exhibit 530 again then?

On page I believe it's all the way in to page 12.  So your rate was 405.  Mr. Grondahl's rate was 395 on that bill; correct?

A   Correct.

Q   And, again, those are the rates that Judge Shea applied in awarding a partial judgment in this case; correct?

A   I believe I answered that, yes.

Q   Now, the change of Mr. Grondahl's rate from 395 an hour to 485 an hour, that's $90 an hour; correct?

A   That sounds fair.

Q   And that amounts to an increase of over 22 percent for Mr. Grondahl's time.

A    Yes.

Q    And you then billed at Mr. Grondahl's rate from March 2013 all the way until the last bill for the time incurred in July of 2019; correct?

A    Yeah.  Well, you say "until."  We -- just to be clear, it was until the end of the litigation, six years later.

Q    Yup.

A    Yeah.

Q    Now, for Mr. Rechen, M&E billed him at $405 an hour in 2013; correct?

A    That's correct.

Q    And that rate did not change until much later.  Isn't that right?

A    That's correct.

                    *    *    *    *    *


                    *    *    *    *    *

Q    I'm sorry.  My question wasn't clear.

        In the Caudill case, Mr. Rechen's rate was $405 an hour in 2013; correct?

A    That's correct.

Q    And in the Caudill federal court case, Mr. Rechen's rate was $405 an hour in 2014; correct?

A    Yes.

Q    And through part of 2016, his rate was $405 an hour;

correct?

A   One month.

Q   And when you first told Mr. Pepe that you didn't raise the rates of any partners for the entire case, that wasn't true; correct?

A   Well, that's not fair.  We increased Mr. Rechen in January or February of 2016 because we discovered that he was being billed at his rate from 2008.

Q   Right.

A   He was handling -- if you'd like me to explain, I will.  If not --

Q   No, go ahead.

A   Okay.  He was handling another matter for Jarrow Formulas at the time.  There was a lawsuit where Kean Ashurst, which I didn't explain to the jury yesterday, there was a lawsuit where Kean Ashurst had sued Caudill Seed on an employment basis.

Q   And that was a new case.

A   Well, it was -- it was a case that, um, I don't know when it was filed.  It was after the -- after the state case brought against Kean Ashurst.  Mr. Rechen's rate in that case -- anyway, I asked him in January -- in February of -- either January or February of 2016 to review the bill in that matter because it was -- he was handling it.

     And he discovered, in looking at it, that his rate was set was from 2008.  It was a huge discount.  Okay?  His rate at

that time was over 535.  Um, and so at that point we said, "Oh, geez, we missed it.  We've got to fix that."

We set his rate, um, at a similar discount that we were giving Jarrow Formulas for Attorney Grondahl and me.  So by that time in 2016, Jarrow Formulas was receiving a discount on my rate and Attorney Grondahl's rate.  We set Attorney Rechen's rate in between Attorney Grondahl and me so he had a similar discount off his standard rate for Jarrow Formulas.

The best I can recall in March, immediately following that bill, we had numerous discussions with Mr. Rogovin.  We were conducting a settlement mediation down in Louisville.  We had numerous discussions leading up to that settlement mediation, and we had spent two or three days with him in Louisville, lunch, dinner, numerous discussions.

*     *     *     *     *


*     *     *     *     *

Q    Then, after that, in the second paragraph you wrote, "Attached please find copies of the below-mentioned invoices issued to Jarrow Formulas, Inc. in connection with this matter."

Do you see that?

A    Yes.

Q    And then behind that, if we can page down behind that to the bills that you sent, these are the redacted bills that Mr.

Pepe took you through yesterday where anything to do with the Ashurst Kentucky case was redacted, the hours were adjusted in terms of the total hours, and that was done because they were just asking for the Kentucky federal case; correct?

A   Fair.

Q   So if we can page down now to each page of that bill.

Now, on page 12 of that bill, this shows the hourly rates from page 12 of that initial bill that was sent in both the Ashurst and the federal court case; correct?

A   I'm sorry.  Could you say that again?

Q   Page 12 of the bill shows the rates that were reflected for the January time, January 2013 time, in both the Ashurst and Caudill cases; correct?

A   Those are the -- those are the agreed rates with the insurance company.

Q   Right.

A   For the -- applied to the time that was billed in those months.

Q   But this was not the bills issued to Jarrow Formulas in January of 2013.  This bill that's been redacted, which is the bill that was issued to Jarrow Formulas, has been changed in that the billing rate for you and Mr. Giarratana has been changed from 405 to 535 for you and to 485 from 395 for Mr. Grondahl; correct?

A   It's been changed to reflect the agreed rates, yes.

Q   So this is not a copy of the bill issued to Jarrow Formulas, is it?

A   Well, it's -- it's -- it's evident that it's a changed -- it's a changed copy.  It's got a lot of changes on it.

Q   And the changes to your billing rate and Mr. Grondahl's billing rate were made by Attorney Shawn Smith -- correct? -- at your request.

A   Yes.

Q   And we saw the e-mail yesterday where you instructed him to change the size of the font of those billing rates so that it would look like the other rates on the bill; correct?

A   That's correct.

Q   And you did that, Mr. Giarratana, because you didn't want to draw attention, Liberty Underwriters' attention, to the fact that the bill -- the billing rates were different from the bill actually issued to Jarrow Formulas.  Isn't that right?

A   That's one of the reasons.

Q   And, in fact, when you sent these bills to Liberty Underwriters, one of the bills had already been paid by Jarrow Formulas at the initial January 2013 rates; correct?

A   I believe so.

Q   You're not sure?

A   I believe so.

Q   So the bills that you sent to Liberty were altered to show the increased rates for you and Mr. Grondahl that M&E had

agreed to with Liberty; correct?

A    That was one of the changes.

Q    But you denied during your deposition in this case that you sent altered bills to Liberty Underwriters, but the copies you sent had different rates from the bills you sent to Jarrow Formulas for January 2013 time; correct?

A    I don't recall my testimony that you're characterizing.

Q    Well, I'd like to play for the jury Mr. Giarratana's deposition, page 183, line 2, to page 183, line 10.

THE COURT:  All right.  You can do that.

(Plays video.)

*    *    *    *    *

*    *    *    *    *

Q    (By Mr. Resser) Now, this is page 12 from the bill, the copy of the February invoice for January time that was sent to Liberty; correct?

A    That's a copy of that page, yes, that was sent.

Q    And so this shows the change that was made to the billing rate column between the two documents that were sent.  540A was sent to Jarrow Formulas, and 540B was sent to Liberty Underwriters; correct?

A    Yes.

Q    And 540B is the one that you told Shawn Smith to change the font to make it bigger; right?

A    Yes.

                    *    *    *    *    *

                    *    *    *    *    *

Q    Now, on Exhibit 540B there's no redaction showing that that was a change to the bill issued to Jarrow Formulas, was there?

A    No, for a number of reasons.

Q    And I think you said yesterday that was because the insurance company didn't have a right to know what rates you were charging Jarrow Formulas in January 2013; correct?

A    That's one of the reasons.

Q    But you do have -- they do have the right to know the billing rates you were going to charge them for Jarrow Formulas going forward; right?

A    Of course, because they were committing to reimburse at those agreed rates.

Q    And you didn't want to draw attention to the rate change on these bills, and that's why you asked Mr. Smith to change the font size; correct?

A    That's one of the reasons.

                    *    *    *    *    *

C E R T I F I C A T E

MCCARTER & ENGLISH, LLP VS. JARROW FORMULAS, INC.

NO. 3:19-CV-1124 (MPS)

I, Julie L. Monette, RDR, CRR, CRC, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/S/ JULIE L. MONETTE

_____
Julie L. Monette, RDR, CRR, CRC
Official Court Reporter
450 Main Street - Clerk's Office
Hartford, Connecticut 06103
(860) 212-6937