UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x

McCARTER & ENGLISH, LLP             No. 3:19-CV-1124 (MPS)

vs.                                 JULY 17, 2023

JARROW FORMULAS, INC.               JURY TRIAL

- - - - - - - - - - - - - - - - x


EXCERPTS FROM THE TESTIMONY OF ERIC GRONDAHL


450 Main Street
Hartford, Connecticut


BEFORE:  THE HONORABLE MICHAEL P. SHEA, U.S.D.J.

AND A JURY


COURT REPORTER:  Julie L. Monette, RDR, CRR, CRC
(860) 212-6937

Proceedings recorded by mechanical stenography, transcript produced by computer.

APPEARANCES:

FOR THE PLAINTIFF:

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
One State Street, 14th Floor
Hartford, Connecticut 06103
BY: LOUIS R. PEPE, ESQUIRE
JAMES G. GREEN, JR., ESQUIRE
JAMES A. BUDINETZ, ESQUIRE
DAVID W. CASE, ESQUIRE

FOR THE DEFENDANT:

BARTON LLP
100 Wilshire Boulevard, Suite 1300
Santa Monica, California 90401
BY: BERNARD M. RESSER, ESQUIRE

BARTON LLP
711 Third Avenue, 14th Floor
New York, New York 10017
BY: JAMES E. HEAVEY, ESQUIRE
BY: MICHAEL C. WARD, ESQUIRE

(Excerpts from the testimony of Eric Grondahl)

Examination by Mr. Ward:

*     *     *     *     *

Q   (By Mr. Ward) And at some point McMcCarter & English increased your hourly rate in the Kentucky case from $395 an hour to $485 an hour; right?

A   When you say "the Kentucky case," which one?  There were two.

Q   The Kentucky federal litigation.

A   Yes.

Q   So your rate was increased at some point from 395 to 485 an hour; correct?

A   That sounds right.

Q   But you weren't aware of that rate increase when it occurred?

A   I don't recall of being aware of that at the time, no.

*     *     *     *     *


*     *     *     *     *

Q   But you weren't on the EC, or Executive Committee, at McCarter & English in 2012 or 2013, were you?

A   Well, this is 2011.  And I have had management positions at the firm but not on the Executive Committee.

Q   And you didn't question Ms. Adipietro or Mr. Giarratana about misleading a client about how you were on the EC as a

negotiating tactic?

A   I -- I don't know that I ever saw that.  I just said that.

                    *     *     *     *     *


                    *     *     *     *     *

Q   Okay.  So let's play Mr. Grondahl's deposition at page 36, lines 14, to page 37, line 1.

        THE COURT:  36, lines?

        MR. WARD:  14.

        THE COURT:  Yes.

        MR. WARD:  To 37, line 1.

        THE COURT:  Okay.

    (Plays video.)

Q   (By Mr. Ward) Mr. Grondahl, so Caudill Seed, in the discovery process, did not provide supporting documents for their tax returns for everything that they were claiming on their tax returns; right?

A   That is incorrect.

Q   They provided documents for every single item that they --

A   That's not correct either.  They provided us ledgers, their R&D subledgers, that showed what they put in their accounting books for the years 2007 through 2013.  Um, there was also something that Mr. Wingate called other development costs.  I forgot the exact title.  It was the second exhibit.  And we had

all of the invoices and backup for the expenses that were in that exhibit.

Q   Okay.  That's not what you testified to at your deposition, is it, sir?

A   That's not true, sir.  I said that several times.

Q   Okay.  Let's take a look at page 34, lines 8 through 16.

THE COURT:  Okay.

(Plays video.)

THE WITNESS:  Right, they didn't give us everything for everything they were claiming.  I said that.

Q   (By Mr. Ward) And you knew that Caudill had their tax returns prepared by a third party; correct?

A   I don't know who prepared their tax returns.

Q   And you knew that Caudill Seed had financial statements prepared by a third party; right?

A   I assume they were, but I don't know who.

Q   But McCarter & English did nothing to pursue from Caudill Seed's accountants what records they might have with respect to those tax returns?

A   Well, we asked Caudill Seed for their records.  They required under the federal rules to produce everything under their custody and control; and presumably if their accountants had those records, they would have asked for them and produced those.

Q   And you never tested those assertions by going to the

person who prepared the tax returns?

A   Who do you mean?  The person who did Caudill Seed's tax returns?

Q   Prepared them.

A   Prepared them.  No, we didn't do that.

Q   Well, it's fair to assume that accountants, when they prepare tax return, they create and preserve work papers; right?

A   I don't know what they had.  I don't know if they had invoices.  I don't know if they just had the subledgers.  I have no idea what they had.  We had the subledgers for 2007 through 2013.

Q   Well, you never asked the accountant for those work papers; right?

A   No.

                    *    *    *    *    *


                    *    *    *    *    *

Q   And you knew for about four and a half years that Mr. Wingate was relying on an incomplete set of information?

A   Yes.

                    *    *    *    *    *


                    *    *    *    *    *

Q   (By Mr. Ward) Mr. Grondahl, did you have any face-to-face

meetings with Mr. Rogovin to prepare him for trial -- to testify at trial?

A   Mm, not that I recall, no.

Q   There's been testimony -- it may have been on a day, I acknowledge, that you were not here.

THE COURT:  I'm sorry.  Can I see counsel for a second, please?

(At sidebar off the record.)

THE COURT:  Go ahead, Mr. Ward.  Next question.

Q   (By Mr. Ward) On -- during the trial on June 13th, which was a Thursday, do you recall a meeting among the lawyers and some of the clients in the Stites -- in the Stites office in Kentucky to discuss the issue of Mr. Rogovin testifying at trial?

A   I do.

Q   Okay.  And Mr. Rogovin was not in that meeting; correct?

A   He was not in the meeting, no.

Q   And, indeed, Mr. Rogovin never testified at the Kentucky trial; correct?

A   Well, his deposition testimony was played.

Q   He was never presented as a witness at the trial?

A   He was presented as a witness.  He didn't testify live.

Q   And the clips that were played were in his deposition taken by Caudill's counsel; correct?

A   That's often how these things happen.  I think it happened

in this case.

Q   So Mr. Rogovin's attorneys never questioned him in the Kentucky case; correct?

A   Never questioned him in the Kentucky case.  There were no questions as I recall in his deposition, and he did not testify live at the trial.  That's -- so ...

                    *    *    *    *    *


                    *    *    *    *    *

Q   (By Mr. Ward) On page 19 this reflects your hourly rate at $395 in the Ashurst litigation, at least as of October 15th, 2013; is that correct?

A   That's what it says, yes.

                    *    *    *    *    *

C E R T I F I C A T E

MCCARTER & ENGLISH, LLP VS. JARROW FORMULAS, INC.

NO. 3:19-CV-1124 (MPS)

I, Julie L. Monette, RDR, CRR, CRC, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/S/ JULIE L. MONETTE

_____

Julie L. Monette, RDR, CRR, CRC
Official Court Reporter
450 Main Street - Clerk's Office
Hartford, Connecticut 06103
(860) 212-6937