UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| McCARTER & ENGLISH, LLP,<br><br>*Plaintiff*,<br><br>v.<br><br>JARROW FORMULAS, INC,<br><br>*Defendant*. | No. 3:19-cv-01124 (MPS) |

**RULING ON MOTION TO ALTER OR AMEND JUDGMENT**

**I.   Introduction**

Jarrow asks the Court to alter or amend the judgment in this case under Rule 59(e). ECF No. 552. For the reasons set forth below, the motion is denied.

**II.   Procedural History**

I assume familiarity with the procedural history of this case as set forth in my ruling on post-verdict motions and incorporate it by reference. *McCarter & Eng., LLP v. Jarrow Formulas, Inc.*, 715 F. Supp. 3d 281, 289 (D. Conn. 2024).

**III.   Legal Standard**

A.   Rule 59(e)

"A court may grant a Rule 59(e) motion only if the movant satisfies the heavy burden of demonstrating 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Hollander v. Members of Bd. of Regents of Univ. of New York*, 524 F. App'x 727, 729 (2d Cir. 2013).

Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotation marks omitted). "It is well-settled that Rule 59 is

1

not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (internal quotation marks omitted).

"A court should deny [a Rule 59(e)] motion 'where the moving party is solely attempting to relitigate an issue that already has been decided,' and must remain vigilant 'to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *Ong v. Chipotle Mexican Grill, Inc*., 329 F.R.D. 43, 50 (S.D.N.Y. 2018), *aff'd sub nom*. *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc*., 970 F.3d 133 (2d Cir. 2020).

### B. Forfeiture

Untimely arguments are considered forfeited. *United States v. Olano,* 507 U.S. 725, 733 (1993) ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'"). An argument is untimely, and therefore forfeited, when a litigant raises it for the first time in a Rule 59(e) motion despite having had the opportunity to raise it earlier. *See Dresser-Rand Co. v. Pdvsa Petroleo, S.A.*, 2021 WL 2878936, at *3 (2d Cir. July 9, 2021) (District Court properly treated argument that was raised for the first time in motion for reconsideration as forfeited).

## IV. Discussion

### A. Alternative Calculations

Jarrow argues that it did not forfeit its opportunity to present alternative calculations regarding the computation of prejudgment and offer of compromise interest because it was only presented with McCarter's proposed calculations for the first time on February 26, 2025, and was not afforded the opportunity to respond before I entered judgment. ECF No. 553 at 8-10. I disagree and decline to alter or amend the judgment on this basis.

Following the jury verdict in this case, McCarter moved for an award of both prejudgment and offer of compromise interest. ECF Nos. 464, 466. McCarter proposed a start date for both types of interest of July 22, 2019. ECF No. 467 at 10, 36. McCarter also proposed using simple (rather than compound) interest and explained its proposed calculations. *Id*. at 18, 37. In response, Jarrow argued that prejudgment interest should not be awarded at all; that the rate of prejudgment interest, if granted, should be below 10 percent; and that Jarrow was entitled to an offset for interest that escrowed funds would have earned had they been placed in an interest-bearing account. ECF No. 477 at 6-14. Jarrow did not object to the start date of either type of interest, and in fact Jarrow used McCarter's proposed start date of July 22, 2019 in formulating its arguments. *Id*. at 12 ("However, from July 2019 to July 2023, interest rates were not sitting at 9% as Plaintiff implies."). Jarrow then consented to McCarter's filing of revised calculations to account for the escrowed funds and preserved its right to object to the calculations. ECF No. 480. McCarter's revised calculations again used the start date of July 22, 2019. ECF No. 481 at 1-2. Jarrow did not, until now, object to the calculations, present its own calculations, or object to the start dates used in the calculations.

In ruling on the post-verdict motions, I found that the proper start date for prejudgment and offer of compromise interest was July 22, 2019, and that the proper end date for both was the entry of judgment, except that interest would stop running on September 29, 2023 on the escrowed funds. *McCarter & Eng., LLP v. Jarrow Formulas, Inc*., 715 F. Supp. 3d 281, 318, 321 (D. Conn. 2024). I noted that "Jarrow does not contest McCarter's proposed start and end dates." *Id* at 318. And I found that "a prejudgment interest rate of 8 percent is fair in this case." *Id*. After the Connecticut Supreme Court answered the question I certified to it, *McCarter & Eng., LLP v. Jarrow Formulas, Inc*., 351 Conn. 186, 188–89 (2025), I instructed the parties to "each file a statement of no more

3

than five pages each describing the next steps the Court should take in the case and the impact of the Connecticut Supreme Court's ruling on the question of law certified by this Court." ECF No. 540. Both parties submitted statements. ECF Nos. 543, 544.

McCarter's statement laid out the simple interest calculation for prejudgment and offer of compromise interest, using the start and end dates from my post-verdict ruling and the eight percent annual interest rate.[1] ECF No. 543. For its statement, Jarrow argued that I should not have certified the question on punitive damages to the Connecticut Supreme Court and that the Connecticut Supreme Court should not have accepted that question because Connecticut law already provided an answer. ECF No. 544. Jarrow argued that the jury verdict should be overturned, and a new trial granted. *Id*. On this basis, Jarrow argued "offer-of-compromise and all interest calculations should be cancelled" and asked me to deny "all prejudgment and offer of compromise interest as they are predicated on a contaminated trial and legally unsound verdict." *Id*. at 3, 6. Jarrow did not address any objection to the start dates for interest.

I found Jarrow's arguments in support of vacatur of the jury verdict and all post-verdict motions to be without merit. ECF No. 548. And I found that Jarrow's new evidentiary and procedural arguments were untimely and therefore forfeited because Jarrow could have raised those novel arguments in the post-verdict motions. *Id*. Because Jarrow "did not provide calculations in its statement in response to my Order, other than to argue that portions should be vacated, I [found that Jarrow] waived the opportunity to present alternative calculations." *Id*. I found McCarter's calculations of offer of compromise interest and the total amount to which it argued it was entitled to be accurate, and I adopted them in full. *Id*. I entered judgment in the total amount of $3,766,174.63. ECF No. 549.

---

[1] The eight percent annual interest rate is mandated by Conn. Gen. Stat. § 52-192a(c) for offer of compromise interest.

4

Although I agree with Jarrow that my order inviting the parties to submit statements regarding "next steps," ECF No. 540, is too slender a reed, by itself, to support a finding of forfeiture, I need not and do not rely on that order to make such a finding. As McCarter notes in its opposition brief, ECF No. 556 at 11-15, Jarrow had multiple opportunities to contest the start and end dates used in the calculations and the calculations themselves, and to provide its own calculations, long before judgment entered in this case. Raising these arguments now in a Rule 59(e) motion is too late. *Dresser-Rand Co. v. Pdvsa Petroleo, S.A.*, 2021 WL 2878936, at *3 (2d Cir. July 9, 2021).

But even if Jarrow had not forfeited this argument, I find that, on the merits, there are no "alternative calculations" that I would use to calculate the prejudgment and offer of compromise interest. The simple interest calculations that I adopted, ECF No. 548 (adopting calculations from ECF No. 543 at 2-4), compute the interest due by multiplying the damages amount by the 8 percent interest rate and the number of days on which interest accrued. Jarrow uses the same method in the calculations it proposes now, altering only the number of days on which it contends interest accrued. ECF No. 553 at 19-22. For the reasons below, I decline to alter my judgment regarding the days on which interest accrued.

B. The Second Amended Complaint

Jarrow argues that because McCarter filed an amended complaint after McCarter's offer of compromise, the judgment should be modified to exclude the offer of compromise interest. Jarrow contends that the amended complaint nullified the offer of compromise because it "fundamentally altered the nature of the case" and was filed "*after* the statutory period in which JFI was even *legally capable of accepting Plaintiff's offer*." ECF No. 553 at 11. In the alternative, Jarrow asks me to modify the judgment to calculate the offer of compromise interest using the date the amended

5

complaint was filed, as opposed to the date the original complaint was filed. I decline to alter or amend the judgment on this basis.

First, I find that Jarrow has forfeited this argument by failing to raise it prior to its Rule 59(e) motion. Jarrow did not mention offer of compromise interest at all in its opposition to Plaintiff's Motion to Amend its Complaint. ECF No. 159. At the post-verdict stage, after McCarter filed its Motion for Offer of Compromise Interest, ECF No. 466, Jarrow failed to object to the start date for offer of compromise interest or raise any claim regarding the Second Amended Complaint's effect on the offer of compromise. ECF No. 477 at 20-21 (arguing only that Jarrow "Rejects Plaintiff's Offer-to-Compromise" because it "constitutes no offer of compromise whatsoever."). In my ruling on post-verdict motions, I noted that "Jarrow does not contest McCarter's proposed start and end dates." *McCarter & Eng., LLP v. Jarrow Formulas, Inc.*, 715 F. Supp. 3d 281, 318 (D. Conn. 2024). *See also id* at 321 n.23 ("Under Conn. Gen. Stat. § 52-192a(c), this interest began accruing on July 22, 2019, the date the McCarter filed its complaint, and continues accruing until judgment is entered."). Even in its statement submitted after the Connecticut Supreme Court's ruling, Jarrow argued that my order granting leave to amend the complaint warranted vacatur of the jury verdict and a new trial, not specifically that I should invalidate the award of offer of compromise interest because McCarter had filed an amended complaint. ECF No. 544 at 6 (requesting relief including "[d]enial of all prejudgment and offer of compromise interest as they are predicated on a contaminated trial and legally unsound verdict"). Accordingly, Jarrow forfeited its argument regarding the Second Amended Complaint's effect on the offer of compromise and raising it now in a Rule 59(e) motion is too late. *Dresser-Rand Co. v. Pdvsa Petroleo, S.A.*, 2021 WL 2878936, at *3 (2d Cir. July 9, 2021).

Second, even if Jarrow had preserved this argument, I would find, on the merits, that the Second Amended Complaint did not nullify or invalidate the offer of compromise, and the proper start date for the running of offer of compromise interest was the filing of the original complaint, not the amended complaint.

Jarrow argues that McCarter's Second Amended Complaint should invalidate the offer of compromise because the amendment was not motivated by the "plaintiff's worsening condition or other developments that occur after an offer of compromise is tendered, and which should have been reasonably foreseeable to the defendant," but instead by the addition of a claim for punitive damages. ECF No. 553 at 12-14. But under Connecticut law, an offer of compromise "is an offer to settle the entire case, including claims both known and unknown, and both certain and uncertain." *Blakeslee Arpaia Chapman, Inc. v. El Constructors*, 239 Conn. 708, 750-51 & n.51 (1997) (rejecting argument that offer of compromise was invalidated because the plaintiff added a claim against the defendant that was not contemplated in the offer of compromise: "Simply put, the uncertainties of litigation [are] a factor that a defendant must take into account when deciding whether to accept or reject an offer of judgment."). Applying this principle, Connecticut courts have repeatedly held that an amended complaint does not invalidate an offer of compromise. *Id*; *Lutynski v. B.B. & J. Trucking, Inc.*, 31 Conn. App. 806, 813-14 (1993), *aff'd* 229 Conn. 525 (1994) ("Obviously, if injuries worsen as time passes, damages will increase, and, if injuries mend, damages will decrease. These are the vagaries of offers of settlement. The fact that the plaintiff amended his complaint to allege 'permanent brain damage with an emotional upset' does not make his claim for damages less of a claim underlying his action. There is only one claim underlying the plaintiff's action, although its value may change. We conclude that the plaintiff made an offer to settle that claim, including present and future damages arising from injuries known and unknown

7

as of that date."). As McCarter points out, courts have not limited the principle that an offer of compromise remains valid after the filing of an amended complaint to cases in which the plaintiff's condition worsened. *See Ceci Bros., Inc. v. Five Twenty-One Corp.*, 81 Conn. App. 419, 433 *cert. denied*, 268 Conn. 922 (2004) (plaintiff "was under no requirement to refile" the offer of compromise after amending complaint to assert new causes of action for breach of contract and quantum meruit).

Jarrow even suggests that McCarter made its offer of compromise in bad faith, under-pleading its original complaint in order to "lull" Jarrow "into a false sense that the claimed injuries do not warrant accepting an offer of compromise based on that action." ECF No. 553 at 16-18. But even if this was a cognizable basis for changing the date set by statute from which offer of compromise interest is to run, *see* Conn. Gen. Stat. § 52-192a; *see also Lutynski v. B.B. & J. Trucking, Inc.*, 31 Conn. App. 806, 818 (1993), *aff'd* 229 Conn. 525 (1994) (where a complaint is amended after the filing of an offer of compromise to allege expanded damages, the plaintiff is entitled to offer of compromise interest "from the date the original complaint was filed until the date of judgment"), there is no evidence that McCarter was strategically under-pleading its original complaint. *See* McCarter's Memorandum in Support of its Motion for Leave to Amend, ECF No. 156; *see also* Jarrow's Opposition to McCarter's Motion for Leave to Amend, ECF No. 159. As McCarter points out, the Second Amended Complaint does not even mention the voicemail Jarrow references in its Motion here. *Compare* ECF No. 174 *with* ECF No. 553 at 13-17.

Finally, despite all its excited rhetoric and use of italics, *see, e.g.,* ECF No. 553 at 8, 11, Jarrow fails to show how it has been unfairly prejudiced by the interest calculations adopted by the Court. Before McCarter sought to amend its complaint, Jarrow had an opportunity to settle this case—which, at the time, included no claim for punitive damages—for the compensatory damages

8

of $1.8 million set forth in McCarter's offer of compromise. It chose not to do so during the 30-day statutory period set forth in the offer-of-compromise statute, Conn. Gen. Stat. § 52-192a, with full awareness that its choice entailed the risk not only that McCarter would recover more than $1.8 million in compensatory damages, which, in fact, it did, *see* ECF Nos. 194 (ruling on motions for summary judgment), 433 (jury verdict), but also that the complaint might be amended to add new damages claims. As noted, all of this transpired before McCarter moved to amend, which means that the Court's allowance of the amendment had no impact on Jarrow's decision not to accept the offer and that the amendment adding the punitive damages allegations—ultimately nullified by the Connecticut Supreme Court—had no impact on Jarrow's finding itself liable for offer-of-compromise interest. In this light, Jarrow's suggestion that it was somehow deprived of an opportunity to accept an offer of compromise that rested on a punitive damages claim is hard to swallow; if Jarrow was unwilling to pay less than compensatory damages to settle the case, it is implausible that it would have been willing to settle the case for an amount that McCarter might have later proposed to take account of a punitive damages claim, especially because Jarrow took the position—ultimately adopted by the Connecticut Supreme Court—that such a claim was improper.[2]

### C. The "Delay" From Certification

Jarrow argues that prejudgment interest and offer of compromise interest should be reduced to account for what it calls a "substantial delay" in the entry of judgment caused by certification of the question on punitive damages to the Connecticut Supreme Court. I decline to alter or amend the judgment on this basis either.

---

[2] Jarrow's claim of a missed opportunity to settle the case also rings hollow when one examines the docket, which shows that an experienced Magistrate Judge made multiple unsuccessful efforts to assist the parties in resolving the case, both before and after the verdict. *See* ECF Nos. 210, 217, 299, 325, 530, 538, and 539.

I find that Jarrow has forfeited this argument by failing to raise it prior to its Rule 59(e) motion. In Jarrow's many objections to the certification process, Jarrow never raised the argument that certification itself would result in the accrual of additional interest. In its objections to the certification process, Jarrow mentioned only the "unnecessary and significant delay of litigation," but failed to explain how that delay would impact Jarrow. ECF No. 499 at 14. Jarrow never requested a stay of prejudgment or offer of compromise interest, despite filing a motion to stay proceedings pending certification. ECF No. 508. Jarrow's memorandum in support of its motion to stay contained no mention of the running of interest. ECF No. 509 at 5 ("JFI should not be held responsible for amounts that may not be authorized by law and the proceedings should be halted."). Jarrow also could have raised the issue of interest running during the certification process by filing an objection to certification with the Connecticut Supreme Court, which invited Jarrow to do so. Docket SC230229 Notice filed April 3, 2024 ("Written objection, if any, to the acceptance of the request may be filed until April 15, 2024, by e-filing as an opposition to preappeal motion number SC 230229. See Practice Book § 82-4."). Again, Jarrow chose to remain silent.

After I ordered the parties to file a statement "describing the next steps the Court should take in the case and the impact of the Connecticut Supreme Court's ruling on the question of law certified by this Court," ECF No. 540, Jarrow argued that the issue of punitive damages "should not have been certified to the Connecticut Supreme Court and the per diem interest which accumulated should be vacated." ECF No. 544 at 2. Jarrow now contends that I should understand that statement as an objection to the running of interest during the certification process and find that it did not forfeit that argument. ECF No. 557 at 3. But Jarrow asks me to read into this sentence an argument that it did not make. In its statement, Jarrow asked me to vacate the per diem interest that accumulated since August 3, 2023, ECF No. 544 at 6, *i.e.*, the date on which I issued an order

10

setting the schedule for post-verdicts brief, ECF No. 443, not the interest that accumulated due to the certification process, which began the following year. ECF No. 493 (February 8, 2024 Order). Accordingly, Jarrow forfeited its argument regarding a reduction in interest due to the certification process and raising it now in a Rule 59(e) motion is too late. *Dresser-Rand Co. v. Pdvsa Petroleo, S.A.*, 2021 WL 2878936, at *3 (2d Cir. July 9, 2021).

But even if Jarrow had not forfeited this argument, I would find, on the merits, that it is not entitled to a reduction in interest due to the "delay" from certification. Offer of compromise interest is not subject to a stay or reduction for litigation delay. *Accettullo v. Worcester Ins. Co.*, 256 Conn. 667, 672 (2001) ("[A]n award of interest under § 52–192a is mandatory, and the application of § 52–192a does not depend on an analysis of the underlying circumstances of the case or a determination of the facts"); *Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc.*, 239 Conn. 708, 751-53 (1997) (rejecting argument that trial court should toll offer of compromise interest during three-year period during which the state court proceedings were informally stayed while the parties litigated a related federal action). Likewise, prejudgment interest is not subject to a stay or reduction for litigation delay. *Wallenta v. Moscowitz*, 81 Conn. App. 213, 245, *cert. denied*, 268 Conn. 909 (2004) ("Although a court must weigh equitable considerations when deciding whether prejudgment interest should be awarded to a plaintiff, the date on which prejudgment interest is to begin and end is not founded on equitable principles. 'The date the interest *begins* to run pursuant to § 37–3a is factual because it necessarily involves a determination of when the wrongful detention began. . . . The date when the wrongful detention terminates is definitively known when judgment is rendered and cannot sooner occur.'"); *Ceci Bros. v. Five Twenty-One Corp.,* 81 Conn. App. 419, 431 (2004) ("The determination of a proper commencement date for prejudgment interest is purely a determination reserved for the trier of fact. In this case, the court did not exclude

11

the time that elapsed while the case was on appeal. There was no abuse of discretion committed by failing to do so.") (internal citation omitted); *Paulus v. LaSala*, 56 Conn. App. 139, 151 (1999), *cert. denied,* 252 Conn. 928 (2000) ("Although § 37–3a is not mandatory, its purpose is to compensate plaintiffs who have been deprived of the use of money wrongfully withheld by defendants. That purpose would be frustrated in cases such as this, where neither party caused a delay in the rendering of judgment, if the time for interest to be paid were shortened to a date other than that of the judgment. We hold that § 37–3a interest when awarded runs until judgment is rendered.")

Lastly, Jarrow's equitable arguments on this point fail as well. Jarrow argues that "justice demands" a reduction in interest because "[o]ver half of the days on which interest accrued were the result of an improper (and unnecessary) certification to the state court[.]" ECF No. 553 at 8. But this is a mischaracterization of the interest, which began running years before the date of the verdict. Jarrow's "over half" or "64 percent" calculation is based on only the time between the verdict and the entry of judgment. *Id.* at 21. More broadly, delay is inherent in most litigation, especially large commercial cases like this one. This case involved voluminous and prolonged discovery and took nearly a month to try, with the charge conference alone lasting over four hours. Further, Jarrow has changed lawyers multiple times in this case, which has not helped expedite maters. (Jarrow's first lawyer passed away before trial.) The parties' sharp differences over the law and the facts—and their overall hostility towards each other, which was apparent during the prolonged discovery process and the lengthy trial—are ultimately what has contributed the most to the delays in this case, not the Court's decision to certify an unsettled question of law to the Connecticut Supreme Court.

12

**V.      Conclusion**

For the reasons set forth above, I DENY Jarrow's motion to alter or amend judgment. ECF No. 552.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            November 4, 2025